69330, 69331. BAGGETT v. NATIONAL BANK & TRUST COMPANY; and vice versa.
(330 SE2d 108)

Pope, Judge.

Richard Baggett sued The National Bank and Trust Company to recover damages for the bank's alleged action in causing him to be arrested and detained as a suspected bank robber. The complaint was grounded on theories of both false imprisonment and negligence. The trial court granted the bank's motion for summary judgment with respect to the false imprisonment count but denied the motion with respect to the negligence count. Baggett appeals from the former ruling, and the bank cross-appeals from the latter ruling.

The salient facts are undisputed for purposes of this appeal. At approximately 10:00 a. m. on February 11, 1981, Baggett entered the bank's Columbus East Branch seeking to deposit a portion of his paycheck into his checking account and to obtain cash for the remainder. He took a deposit slip from a supply provided for customer use, filled it out, and handed it to a teller, along with his paycheck and his driver's license. Unbeknownst to him, on the reverse side of the deposit slip someone had written the words, "This is a stek [sic] up." Upon seeing this message, the teller handling the transaction walked to the rear of the teller area, phoned the acting branch manager, whose office was located directly across the lobby from the teller area, and told her, "I've got a note, call the police." The teller then returned to Mr. Baggett and completed his transaction, whereupon Baggett departed the bank, got into his vehicle, and drove off, without taking or demanding anything to which he was not entitled.

Upon receiving the phone call from the teller, the acting branch manager immediately sounded the bank's silent alarm, which had the effect of alerting the local police department that a robbery or attempted robbery was in progress. Officer Lewis Steward arrived at the bank in response to the alarm shortly after Baggett had left and received from bank personnel an accurate report of what had transpired, including the information that Baggett had a checking account at the bank, had not appeared to be nervous or upset, and had not taken anything that did not belong to him. Officer Steward nevertheless issued a radio bulletin for Baggett's arrest. Baggett was arrested approximately 15 minutes later in response to this bulletin and was brought back to the bank, where bank employees verified that he was in fact the person who had presented the deposit slip. He was then

questioned by police in the bank's conference room, at which time he supplied several handwriting samples. During this phase of the investigation, it was determined that the deposit slip used by Baggett was not the only one in the banking area which contained a "stick up" note on the back. Baggett was subsequently taken to police headquarters, where he was questioned further and finally released about three hours after his arrest, with no formal charges having been lodged against him. Both the arresting officer and the officer who issued the radio bulletin testified by affidavit that no officer, employee, or agent of the bank had requested at any time that Baggett be arrested or detained. *Held*:

1. "The law draws a fine line of demarcation between cases where a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relays facts to an official who then makes an independent decision to arrest or prosecute. In the former case there is potential liability for false imprisonment or malicious prosecution [cit.]; in the latter case there is not. [Cit.]" *Ginn v. C & S Nat. Bank*, 145 Ga. App. 175, 178 (243 SE2d 528) (1978). "[A]s stated in Prosser, Law of Torts, § 119 at 837 (4th Ed. 1971): 'If the defendant . . . merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding; but if it is found that his persuasion was the determining factor in inducing the officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable.' " *Melton v. LaCalamito*, 158 Ga. App. 820, 822 (282 SE2d 393) (1981). See also *Hammond v. D. C. Black, Inc.*, 53 Ga. App. 609 (186 SE 775) (1936); Restatement, Second, Torts § 45A, Comment c at 70 (1965).

The evidence submitted by the bank in support of its motion for summary judgment establishes without dispute that the decision to arrest Baggett was made solely by the police, based on the bank employees' accurate and good faith account of what had transpired, and without any request on their part that he be detained or held in custody. We reject Baggett's contention that contrary evidence is created by two averments in his own affidavit, one to the effect that he was told by a police detective that the teller had identified him as "the guy who tried to rob her" and another to the effect that the acting manager asked him as he was being transported to the bank's conference room, " 'Ricky, why did you do it?' " The former statement is double hearsay and consequently without probative value, while the latter statement does not conflict with the evidence showing that the bank employees provided accurate information to police and made no

effort to procure the arrest. It follows that the trial court did not err in granting summary judgment to the bank with respect to the false imprisonment claim. Accord *Moses v. Revco Discount Drug Centers &c. of Ga.*, 164 Ga. App. 73, 75 (296 SE2d 384) (1982); *C & S Bank of Houston v. McDowell*, 160 Ga. App. 69 (286 SE2d 58) (1981); *Dixie Beer Co. v. Boyett*, 158 Ga. App. 622 (281 SE2d 356) (1981).

2. We further conclude that the bank was entitled to summary judgment on the negligence claim. While it is certainly true that the owner of a business has a duty to protect its customers from injury caused by the tortious misconduct of its employees (see, e.g., *Jacobs v. Owens*, 96 Ga. App. 318, 320 (99 SE2d 895) (1957); *Southern Grocery Stores v. Keys*, 70 Ga. App. 473 (2) (28 SE2d 581) (1944)), the undisputed evidence refutes the existence of such misconduct in this case. Although it may perhaps be said with the benefit of hindsight that the teller overreacted to the "stek up" note, it is quite clear that in doing so she was merely acting in good faith to a perceived threat of criminal activity.

"Statements made in good faith to police officers or others investigating criminal activity cannot be the basis of a tort action. [Cit.]" *Moses v. Revco Discount Drug Centers*, supra at 75. Accord *Manis v. Miller*, 327 S2d 117 (Fla. App. 1976). "To allow an action in negligence to lie against a citizen if he makes an honest mistake in reporting to the police would have a chilling effect on an important source of information about crime. Citizen cooperation is essential to efficient police operation and should not be stifled." *LaFontaine v. Family Drug Stores*, 33 Conn. Supp. 66 (360 A2d 899, 905) (1976). Accord *Meyers v. Glover*, 152 Ga. App. 679, 683-684 (263 SE2d 39) (1979), overruled on other grounds, *McCord v. Jones*, 168 Ga. App. 891, 893 (311 SE2d 209) (1983).

The case at bar is factually distinguishable from our recent decision in *Oden & Sims Used Cars, Inc. v. Thurman*, 165 Ga. App. 500 (3) (301 SE2d 673) (1983). In the case at bar, as we have noted above, Baggett's arrest occurred as the result of an "honest mistake" in reporting to the police a perceived threat of criminal activity. The bank's actions in this regard cannot form the basis of an action in negligence. In *Oden & Sims Used Cars, Inc. v. Thurman*, supra, defendant Martin Burks Chevrolet, Inc. reported as stolen a vehicle which had been erroneously picked up at the Martin Burks lot by defendant Oden & Sims Used Cars, Inc. Oden & Sims subsequently sold the vehicle to plaintiff Thurman. Oden & Sims discovered the error, notified Martin Burks thereof, and reimbursed Martin Burks for the vehicle. However, no effort was made to notify the police that the matter of the stolen vehicle had been resolved, and Thurman, who was unaware of the Martin Burks — Oden & Sims error, was arrested and incarcerated on the basis of the stolen vehicle report *two*

*days after* the matter had been resolved. Unlike the case at bar, Thurman's arrest and incarceration were not, as a matter of law, merely the result of an "honest mistake."

We take this opportunity to amplify and reaffirm our holding in *Oden & Sims Used Cars v. Thurman,* 165 Ga. App. 500 (3) (301 SE2d 673) (1983). A minority of this court now argues that the decision in Division 3 of the opinion may be construed as authority for the proposition that there is such a tort as "negligent false imprisonment," and thus is mistaken. This argument has as its foundation the decision in *Stewart v. Williams,* 243 Ga. 580 (1) (255 SE2d 699) (1979), in which our Supreme Court adopted the view espoused by Harper and James in their treatise on torts: " 'To constitute a false imprisonment, the act of the defendant in confining the plaintiff must be done with the intention of causing a confinement. If the confinement is due to the defendant's negligence, the latter may be liable as for negligence, but the action is then governed by the rules and principles of the tort of negligence, according to which the plaintiff is required to show actual damage. In other words, there can be no such tort as a negligent false imprisonment which of itself makes the defendant liable without proof of the invasion of some interest other than the bare interest in freedom from confinement.' 1 Harper & James, The Law of Torts, § 3.7, p. 228 (1956)." *Stewart v. Williams,* supra at 581-82. This view is echoed by Restatement, Second, Torts § 35 (2), Comment h at 53, 54 (1965): "The mere dignitary interest in feeling free to choose one's own location and, therefore, in freedom from the realization that one's will to choose one's location is subordinated to the will of another is given legal protection only against invasion by acts done with the intention [to confine another within bounds fixed by the actor] . . . So too, the actor whose conduct is negligent or reckless because of the risk which it involves to the other's bodily security [,] or some more perfectly protected interest, is not subject to liability if his conduct causes nothing more than the imposition of a transitory and harmless confinement." Thus, under these authorities, liability for negligence may obtain in a case in the factual posture of *Oden & Sims Used Cars v. Thurman,* supra, provided the plaintiff can establish *actual* damages. Prosser, Law of Torts, § 11 at 48 (4th ed. 1971).

What, then, are actual damages? Black's Law Dictionary at 467 (Rev. 4th ed. 1972) defines "actual damages" as "[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages." Under Georgia law such "actual damages" are known as "special damages." See OCGA § 51-12-2 (b). Did the evidence in *Oden & Sims Used Cars v. Thurman,* supra, disclose any "actual" or "special" damages suffered by the plaintiff Thurman? In *Mouse v.*

*Central Savings &c. Co.*, 120 Ohio St. 599 (167 NE 868) (1929), the Supreme Court of Ohio was presented with a comparable factual situation to that in *Oden & Sims Used Cars v. Thurman.* In *Mouse* the defendant bank mistakenly refused payment of plaintiff Mouse's check payable to a third party who, after investigation at the bank where he was assured by the bank that Mouse had no account, swore out a warrant for Mouse, who was arrested and jailed. "The question . . . arises as to whether, conceding the arrest, and the fact that there is evidence tending to show that the arrest is caused by the act of the bank, the plaintiff has failed to make out a cause of action, because he has alleged no other damage than the arrest, confinement in jail, and the humiliation consequent thereon." *Mouse v. Central Savings &c. Co.*, supra at 871. After discussing what may constitute "actual damages," the court concluded: "What could be a more real and existing damage to a person of good reputation than confinement in the county jail upon a charge concededly erroneous? Such damage is actual, so real, present, and existing, in fact, that the unlawful restraint by one person of the physical liberty of another gives rise to a cause of action all its own, namely that of false [imprisonment]. We have little sympathy with the proposition that a genuine damage would be proved here if the bank's act had resulted in a damage to the plaintiff in his trade or occupation, but that the dishonor thrust upon him by this act of negligence has no existence in fact." Id. at 871. Like the Ohio court we view the circumstances leading to Thurman's arrest by the police, his incarceration in the county jail on an erroneous charge, and his resultant humiliation as "actual damages," not merely the invasion of a "bare interest in freedom from confinement" or "the imposition of a transitory and harmless confinement." See also *Weaver v. Bank of America &c. Assn.*, 59 Cal. 2d 428 (380 P2d 644 (8), 30 Cal. Rptr. 4 (8)) (1963); *Collins v. City Nat. Bank &c.*, 131 Conn. 167, 172-73 (38 A2d 582 (7, 8), 153 ALR 1030) (1944). The decision in *Oden & Sims Used Cars v. Thurman*, supra, properly held that plaintiff Thurman had presented sufficient evidence to withstand defendants' motion for directed verdict on the issue of negligence.

*Judgment affirmed in Case No. 69330; reversed in Case No. 69331. Birdsong, P. J., Sognier, Benham and Beasley, JJ., concur. McMurray, P. J., concurs in the judgment only. Banke, C. J., Deen, P. J., and Carley, J., concur specially.*

BANKE, Chief Judge, concurring specially.

Regardless of what the law of Ohio may be, in Georgia " 'there can be no such tort as a negligent false imprisonment which of itself makes the defendant liable without proof of the invasion of some interest other than the bare interest in freedom from confinement.' " *Stewart v. Williams*, 243 Ga. 580 (1), 581-582 (255 SE2d 699) (1979),

quoting from 1 Harper & James, The Law of Torts, § 3.7, p. 228 (1956). This court's recent decision in Division 3 of *Oden & Sims Used Cars v. Thurman*, 165 Ga. App. 500 (301 SE2d 673) (1983), clearly purports to hold otherwise, and to that extent it should be overruled. (Although the plaintiffs in the *Oden & Sims* case may indeed have had a cause of action, that cause of action was not for simple negligence but for false imprisonment, based on the defendants' wanton and reckless disregard of the consequences of their failure to rescind a stolen car report which one of them had mistakenly made to police with respect to a car the plaintiff had purchased.)

If the majority truly believes that a plaintiff may recover damages in this state from one who negligently but in good faith gives information to police which results in his arrest and confinement, then logic dictates that it should affirm rather than reverse the denial of the bank's motion for summary judgment with regard to Baggett's claim of negligence in the present case. Instead, by reaffirming the *Oden & Sims* decision but denying Baggett the right to present his negligence claim to a jury, the majority appears to be saying one thing while doing another.

I am authorized to state that Presiding Judge Deen and Judge Carley join in this special concurrence.

DECIDED MARCH 13, 1985 —
REHEARING DENIED MARCH 29, 1985 —

*Frank K. Martin*, for appellant.
*Richard Y. Bradley*, for appellee.