OPINION
{¶ 1} Plaintiffs-appellants, Scott and Veronica Dailey ("appellants"), appeal from the November 10, 2004, judgment entry of the Franklin County Court of Common Pleas, which granted the motion of defendant-appellee, First Bank of Ohio ("appellee"), for summary judgment and denied appellants' motion for summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In June of 1999, appellant Veronica Dailey's father, Theodore J. Lomax, took out a loan ("the loan" or "the account") to secure payment on a 1998 Chevy Extended Cab C1500 pick up truck ("the vehicle"). He did so at the behest of his son-in-law, appellant Scott Dailey, to assist with his son-in-law's drywall business, Express Drywall. (Deposition of Theodore J. Lomax, at 17.) According to the oral agreement between Mr. Lomax and appellant Scott Dailey, appellants, and not Mr. Lomax, were to make the loan payments for the vehicle. Id. at 19-20. And, in fact, that is exactly what happened; bank records disclose that all payments made on the loan were from appellants written on a checking account held in the name of Express Drywall.
 {¶ 3} In January 2000, appellants ceased making payments on the loan. Appellee called Mr. Lomax regarding the past-due account, and Mr. Lomax referred appellee to appellants. Mr. James Reinhart, an employee of appellee, advised appellants that the vehicle would be repossessed if the loan was not made current. Subsequent to that exchange, appellant Scott Dailey sent a letter to appellee dated February 23, 2000, in which he explains that he (Express Drywall) is owed money on a project and he is trying to procure legal counsel so that he could obtain those funds. Appellant Scott Dailey concluded that letter by writing, "I will bring this account current and will be able to make my scheduled monthly payments. I ask at this time that you would extend to me a grace period so that I may keep this account open." (Exhibit 21 attached to the deposition of Veronica Dailey.)
 {¶ 4} In response, the parties agreed that a post-dated check would be sent. Included with a letter dated March 9, 2000, appellant Veronica Dailey sent appellee check no. 1065, written on Express Drywall's checking account, post-dated for March 31, 2000. In that letter, she states that "[w]e are scheduled to receive a check on March 30, please hold this check until March 31, 2000. We will bring this account current immediately upon receipt of our check from the Meadows Apartment project." Id. Appellee sought payment on that check in April 2000, but the same was returned for insufficient funds on April 6, and April 13, 2000. Appellant Veronica Dailey claims that when Express Drywall did not receive the payment it was expecting at the end of March 2000, she called appellee to advise that the check would not be honored. Appellee disputes receipt of that call.
 {¶ 5} On April 13, 2000, Mr. Reinhart contacted Mr. Lomax regarding his daughter's check, explaining that if payment was not made, the vehicle would be repossessed. Later that month, Mr. Reinhart sent appellant Veronica Dailey a letter requesting payment on the bounced check within ten days, but she did not remit payment. On May 17, 2000, Mr. Reinhart advised the Tiffin Police Department of appellant Veronica Dailey's bounced check. Mr. Reinhart contacted the Tiffin Police Department on June 16, 2000, seeking an update, but was told that attempts to reach appellants were unsuccessful.
 {¶ 6} In October 2000, the Tiffin Police Department turned its investigation over to the Seneca County Prosecutor. A Seneca County grand jury returned an indictment against appellant Veronica Dailey for passing bad checks in violation of R.C. 2913.11(A). According to Mr. Reinhart's affidavit attached to appellee's motion for summary judgment, appellee did not regain possession of the vehicle until April 2001. Until that date, appellants retained possession and used the vehicle, but did not make any payments. While these events were transpiring, appellee initiated an action in West Virginia against Mr. Lomax.
 {¶ 7} On November 11, 2001, appellant Veronica Dailey was arrested by Franklin County sheriffs. She was taken to the Franklin County jail, where she spent three nights, and was later released on her own recognizance. The charge against her in Seneca County was transferred from the common pleas court to the municipal court, and on May 20, 2002, the charge against appellant Veronica Dailey was dismissed. The dismissal entry did not indicate whether said dismissal was with or without prejudice.
 {¶ 8} Appellants filed suit against appellee on September 13, 2002, alleging malicious prosecution. The parties each filed motions for summary judgment, and on November 10, 2004, the trial court granted summary judgment in favor of appellee.
 {¶ 9} Appellants appeal, assigning the following ten assignments of error:
[1.] WHEN THIS CASE WAS FILED, SEPTEMBER 13, 2002, THE JUDGE IN THIS ACTION WAS JUDGE JENNIFER BRUNNER. BEFORE RULING ON SEVERAL PENDING MOTIONS, ON SEPTEMBER 9, 2004, JUDGE BRUNNER RECUSED HERSELF AS JUDGE (DOCKET ENTRY #116). PRIOR TO JUDGE BRUNNER RECUSAL, ON SEPTEMBER 8, 2004 JUDGE DAVID E. CAIN RENDERED SEVERAL DECISIONS DENYING SOME OF PLAINTIFFS MOTIONS AND RENDERED DECISIONS GRANTING SOME OF DEFENDANTS MOTIONS. [SIC]
[2.] IN THE DECISION AND ENTRY DENYING PLAINTIFFS MOTION FOR SANCTIONS RENDERED SEPTEMBER 8, 2004, AND FILED ON SEPTEMBER 9, 2004 JUDGE CAIN STATED "IN SUPPORT OF THEIR MOTION FOR SANCTIONS, PLAINTIFFS SPECIFICALLY RELY ON A LETTER FROM DEFENDANT'S COUNSEL, DATED JUNE 28, 2004, REQUESTING THAT PLAINTIFFS PRODUCE DOCUMENTS PREVIOUSLY REQUESTED BY DEFENDANT. PLAINTIFFS CONTEND THAT DEFENDANT'S COUNSEL'S REQUEST FOR DOCUMENTS VIOLATED THE COURT-IMPOSED DISCOVERY CUT-OFF DATE. THE LETTER FROM DEFENDANT'S COUNSEL UPON WHICH PLAINTIFFS RELY IS DATED PRIOR TO THE JUNE 29, 2004 DISCOVERY CUT-OFF ESTABLISHED BY THE COURT ON MAY 5, 2004." [SIC]
[3.] "IN SUPPORT OF THEIR MOTION, PLAINTIFFS ALSO ARGUE THAT DEFENDANT IMPROPERLY ISSUED A SUBPOENA FOR RECORDS TO U.S. BANCORP BECAUSE THE SUBPOENA REQUESTED PRODUCTION OF DOCUMENTS AFTER THE ESTABLISHED DISCOVERY CUT-OFF DATE. THE SUBPOENA DEFENDANT ISSUED TO U.S. BANCORP WAS PROPERLY SERVED ON JUNE 28, 2004, PRIOR TO THE DISCOVERY CUT-OFF DATE ". . . [SIC]
[4.] IN THE SAME DECISION JUDGE CAIN ALSO STATED "PLAINTIFFS MOTION FOR DISCOVERY SANCTIONS IS IMPROPER, BECAUSE PLAINTIFFS SEEK INVOLVEMENT OF THE TRIAL JUDGE IN THE DISCOVERY PROCESS BY WAY OF MOTION AND HAVE NOT DEMONSTRATED EXTRAORDINARY CIRCUMSTANCES PERMITTING SUCH COURT INTERVENTION BEYOND THE DISCOVERY CUT-OFF DATE. DEFENDANT, ON THE OTHER HAND, HAS NOT SOUGHT ANY COURT INTERVENTION IN THE DISCOVERY PROCESS BEYOND THE DISCOVERY CUT-OFF DATE." [SIC]
[5.] THE COURT ERRORED IN ITS DECISION GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS MOTION FOR SUMMARY JUDGMENT, FILED OCTOBER 26, 2004. THE COURT WAS FULLY AWARE THAT, "PLAINTIFFS' CLAIM ARISES OUT OF MS. DAILEY'S ARREST ON NOVEMBER 11, 2001 AND SUBSEQUENT PROSECUTION IN SENECA COUNTY ON A CHARGE OF PASSING BAD CHECKS IN VIOLATION OF R.C. 2913.11." (PAGE 1 OF DECISION) THE COURT WAS FULLY AWARE THAT FIRST BANK EMPLOYEE JAMES REINHART, CONTACTED MRS. DAILEY, A THIRD PARTY TO FIRST BANKS LOAN AGREEMENT WITH THEODORE LOMAX. THE COURT WAS AWARE THAT THE REQUEST FOR PRODUCTION OF DOCUMENTS SPECIFICALLY WITH REGARDS TO BANK POLICIES CONCERNING CONTACTING THIRD PARTIES WITH REGARDS TO DELINQUENT CUSTOMERS ACCOUNTS WERE NEVER PROVIDED BY DEFENDANT; AND THAT MRS. DAILEY EXPLAINED TO THE BANK ". . . THAT SHE DID NOT CURRENTLY HAVE FUNDS IN THE BANK SUFFICIENT TO COVER A CHECK IN THE AMOUNT REQUIRED TO BRING THE LOAN CURRENT. (ID. AT ¶ 9; SEE REINHART AFF. ¶ 10)."
The State of Ohio v. Edwards cite as: 141 ohio app.3d 388,751 N.E.2d 510.
[5] FALSE PRETENSES 170 K8 MOST CITED CASES
"WHEN THE PAYEE KNOWS THAT A CHECK IS NOT COLLECTIBLE AT THE TIME IT TENDERED, THERE CAN BE NO CRIME OF PASSING A BAD CHECK. R.C. § 2913.11(A)." [SIC]
[6.] THE COURT WAS FULLY AWARE THAT ON MARCH 9, 2001, FIRST BANK HAD A JUDGMENT AGAINST MR. LOMAX FOR ALL MONIES DUE ON THE ACCOUNT. (EXHIBIT 19) THE BANK EVEN HAD A MORTGAGE LIEN ON MR. LOMAX HOME, AND THAT ANY FURTHER COMPENSATION TO THE BANK WOULD CONSTITUTE UNJUST ENRICHMENT. ON NOVEMBER 11, 2001 FIRST BANK HAD MRS. DAILEY ARRESTED ON A SECRET INDICTMENT FOR PASSING BAD CHECKS. (PAGE 1 OF DECISION). [SIC]
[7.] THOUGH THE STATE OF OHIO V. EDWARDS CITE AS: 141 OHIO APP. 3D 388, 751 N.E. 2D 510.
[4] FALSE PRETENSES 170 K8 MOST CITED CASES
"THE MERE RECEIPT OF A BENEFIT IS NOT ENOUGH TO SUPPORT A CONVICTION FOR PASSING BAD CHECKS; THE STATE ALSO MUST SHOW `DECEPTION' IN THE ACT OF OBTAINING THAT BENEFIT. R.C. § 2913.11(A)."
THE COURT STATED ". . . IT IS FURTHER UNDISPUTED THAT MRS. DAILEY RECEIVED NOTICE OF THE DISHONOR OF HER CHECK AND FAILED TO PAY THE CHECK WITHIN TEN DAYS AFTER RECEIVING SUCH NOTICE. THEREFORE, THIS COURT FINDS THAT THE UNDISPUTED EVIDENCE DEMONSTRATES THAT DEFENDANT HAD PROBABLE CAUSES TO TURN THE DISHONORED CHECK OVER TO LOCAL LAW ENFORCEMENT." (PAGE 6 OF DECISION) [SIC]
[8.] THE COURT STATED, "TO PREVAIL ON A MALICIOUS PROSECUTION CLAIM, A PLAINTIFF MUST PROVIDE THE FOLLOWING ELEMENTS: (1) MALICE IN INITIATING OR CONTINUING THE PROSECUTION; (2) LACK OF PROBABLE CAUSE TO INSTITUTE SUCH PROCEEDINGS; AND (3) TERMINATION OF THE PROSECUTION IN FAVOR OF THE CRIMINAL DEFENDANT." (PAGE 5 OF DECISION) "THE TIFFIN MUNICIPAL COURT DISMISSED THE CRIMINAL PROCEEDING AGAINST VERONICA DAILEY ON MAY 6, 2002, BUT THE ENTRY OF COURT'S DISMISSAL ENTRY DOES NOT STATE WHETHER SUCH DISMISSAL WAS WITH PREJUDICE OR WITHOUT PREJUDICE." (PAGE 8 OF DECISION) ". . . THIS COURT MUST CONCLUDE THAT THE DISMISSAL OF THE INDICTMENT AGAINST MS. DAILEY WAS WITHOUT PREJUDICE. SEVERAL OHIO COURTS HAVE DETERMINED THAT A DISMISSAL OF AN UNDERLYING CASE WITHOUT PREJUDICE IS INSUFFICIENT TO MEET THE REQUIREMENT THAT THE UNDERLYING CASE WAS TERMINATED IN FAVOR OF THE PLAINTIFF IN A MALICIOUS PROSECUTION ACTION "(PAGE 8 OF DECISION) [SIC]
[9.] THE COURT STATED, "AFTER REVIEW AND CONSIDERATION, THIS COURT FINDS DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WELL-TAKEN, AND IT HEREBY GRANTED. THIS COURT FURTHER FINDS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IS NOT WELL-TAKEN, AND IT IS HEREBY DENIED." (PAGE 9 OF DECISION) [SIC]
[10.] THE COURT ERRORED WHEN IT PROVIDED PARTIES WITH A NOTICE OF STATUS CONFERENCE FILED SEPTEMBER 13, 2004; THIS NOTICE INSTRUCTED ALL PARTIES TO ATTEND A STATUS CONFERENCE ON SEPTEMBER 22, 2004 IN CHAMBERS 7D. THE NOTICE ALSO INSTRUCTED "PLEASE BE PRESENT AND PREPARED IN ACCORDANCE WITH LOCAL RULE 41.03, RULES OF PRACTICE. ALSO, YOU SHOULD HAVE YOUR CLIENT(S) PRESENT OR BE AUTHORIZED TO NEGOTIATE SETTLEMENT ON THEIR BEHALF." [SIC]
 {¶ 10} Appellants contend that summary judgment was improperly granted. Civ.R. 56(C) states that summary judgment shall be rendered forthwith if "* * * the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"
 {¶ 11} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 12} Appellate review of summary judgments is de novo. Koos v.Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; MidwestSpecialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. See Dresher; supra; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41-42.
 {¶ 13} We shall address the seventh assignment or error first as it is dispositive of the other assignments of error. Therein, appellants contend that the trial court erred in granting appellee's motion for summary judgment because probable cause did not exist to support the indictment and prosecution of Veronica Dailey. We disagree.
 {¶ 14} To sustain an action for malicious prosecution, appellants must establish: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. Ash v. Ash (1995), 72 Ohio St.3d 520, 522, citingTrussell v. General Motors Corp. (1990), 53 Ohio St.3d 142. The failure to prove even one element by a preponderance of the evidence is fatal.Runyon v. Columbus Southern Power Co. (June 27, 1995), Franklin App. No. 94AP-1656. In Ohio, actions for malicious prosecution have been met with marked disfavor by courts, and courts have allowed recovery only when the requirements of these actions have been fully complied with. Nader v.McBride (June 19, 1980), Cuyahoga App. No. 39641; Waller v. Foxx (Oct. 6, 1982), Hamilton App. No. C-810568, citing Miller v. Omar Baking Co.
(1937), 24 Ohio Law Abs. 375, 380 (observing that in an action for malicious prosecution "`the disfavor with which the action is looked upon is especially marked in cases where the suit is being brought against the plaintiff, as public policy favors the exposure of crime * * *'").
 {¶ 15} The lack of probable cause becomes the heart or the gist of a malicious prosecution claim, for, if probable cause is absent, malice may be inferred. See Huber v. O'Neill (1981), 66 Ohio St.2d 28; Melanowskiv. Judy (1921), 102 Ohio St. 153. Probable cause for purposes of a malicious prosecution action is defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged[.]" Ash v. Marlow (1851),20 Ohio 119, paragraph one of the syllabus; Huber, supra, at 30. Thus, probable cause does not depend upon whether the claimant was guilty of the crime, but rather, whether the accusor had probable cause to believe that the claimant was guilty. Tucker v. Lakeshore Chevrolet, Inc., Cuyahoga App. No. 83589, 2004-Ohio-5381, at ¶ 22.
 {¶ 16} The return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists. Mayes v. Columbus (1995),105 Ohio App.3d 728, 737-738; Tucker, supra, at ¶ 23. In order to rebut this presumption, a plaintiff is "required to produce `substantial' evidence that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise `significantly' irregular." Reinoehl v. Trinity Universal Ins. Co.
(1998), 130 Ohio App.3d 186, 196, quoting Fair v. LitelCommunications, Inc. (Mar. 12, 1998), Franklin App. No. 97AP-804. See, also Deoma v. Shaker Heights (1990), 68 Ohio App.3d 72. Here, appellant was indicted by a Seneca County grand jury for passing a bad check in violation of R.C. 2913.11(A). However, because the grand jury proceeding transcript is not in the record on appeal, there is no evidence that the grand jury proceeding was irregular. Accordingly, we look only to see if appellant met her burden of producing "substantial evidence" that the indictment resulted from perjured testimony.
 {¶ 17} Appellants, however, do not allege that appellant Veronica Dailey's indictment resulted from perjured testimony in either their complaint or appellate brief. Rather, appellants argue that they were not required to pay appellee for the dishonored check because they were not legally responsible for the loan, and because appellee had a judgment against Mr. Lomax. Appellants also contend that they are absolved from the consequences of writing a bad check because appellant Veronica Dailey claims to have advised appellee in advance that the check would be dishonored because of insufficient funds.
 {¶ 18} The facts of this case, however, belie appellants' assertions. Although appellants were not signatories to the loan, they made all payments in relation thereto. When the loan became past due, appellee primarily dealt with appellants; appellants did not refer appellee to Mr. Lomax. Indeed, appellant Scott Dailey wrote in his letter dated February 23, 2000, that once the Meadows Apartments issue is resolved, "I will bring this account current and will be able to make my scheduled monthly payments." (Deposition of Veronica Dailey, Exhibit 23.) (Emphasis added.) Appellant Veronica Dailey was under the same impression. She testified in her deposition that "[t]he purpose [of the letter dated February 23, 2000] was to let the bank know what was going on and also to make them know that we were planning on making our scheduled payments as soon as we got our money." Id. at 95. With respect to appellants' argument that appellee already had a judgment, Mr. Lomax, the timeline in this case discloses that at the time appellants' check was dishonored, and the matter was handed over to the Seneca County Prosecutor, appellee did not have a judgment against Mr. Lomax. Judgment or not, the fact that appellant Veronica Dailey wrote a bad check remains. There is no doubt that appellants, through their course of conduct, as well as statements made by them in depositions and various correspondence, acted as though they were responsible for the loan, and that was certainly Mr. Lomax's understanding of the agreement he had with his son-in-law. (Id. at 101, 106, 107, 109, 114-115 and Exhibits 22, 23, 24, 25; Deposition of Theodore J. Lomax, at 18, 27.) Regardless of who was legally responsible for the loan, or what possible realities may exist, there is but one truth — appellant Veronica Dailey wrote a check on Express Drywall's checking account for payment on the loan, and that check was twice returned for insufficient funds.
 {¶ 19} A review of the record shows that appellant did not meet her burden of producing "substantial evidence" that the indictment resulted from perjured testimony. Instead, a review of the record reveals substantial evidence that would lead a reasonable person to find that probable cause existed to indict appellant for passing a bad check. The undisputed facts show: (1) only appellants, and not Mr. Lomax, made the loan payments; (2) in January 2000, appellants failed to make several loan payments; (3) appellant Veronica Dailey sent appellee a check post-dated for March 31, 2000; (4) that check was returned for insufficient funds on April 6, 2000, and April 13, 2000; (5) appellee sent appellant Veronica Dailey a letter on April 28, 2000, requesting payment on the dishonored check within ten days; and (6) appellant Veronica Dailey did not remit payment. These facts are sufficient to allege a complaint under R.C. 2913.11(A), which provides in pertinent part that "[n]o person, with purpose to defraud, shall issue or transfer or cause to be transferred a check or other negotiable instrument, knowing that it will be dishonored." Additionally, appellant has not demonstrated that the institution of charges for passing a bad check was anything but the result of the prosecutor's uncontrolled discretion.Tucker, supra, at ¶ 26, citing Robbins v. Fry (1991),72 Ohio App.3d 360, 363.
 {¶ 20} Given that the failure to prove even one element of a claim for malicious prosecution is fatal, we need not address whether the evidence supports the other two elements. Runyon, supra. Further, as a result of appellant Veronica Dailey's inability to maintain her claim of malicious prosecution, any claim asserted by appellant Scott Dailey also fails as a matter of law.
 {¶ 21} Based on the foregoing, we conclude that there is no genuine issue of material fact, and that appellee is entitled to judgment as a matter of law. Appellants' ten assignments of error are overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and McCormac, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.