[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Foley v. Univ. of Dayton,* Slip Opinion No. 2016-Ohio-7591.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7591

FOLEY ET AL. v. UNIVERSITY OF DAYTON ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Foley v. Univ. of Dayton,* Slip Opinion No. 2016-Ohio-7591.]

*Certified questions of state law—No cause of action exists in Ohio for the tort of negligent misidentification—Questions certified by the federal court are moot.*

(No. 2015-2032—Submitted July 13, 2016—Decided November 3, 2016.)

ON ORDER from the United States District Court for the

Southern District of Ohio, Western Division,

Certifying Questions of State Law, No. 3:15-cv-96.

_____

KENNEDY, J.

## I. Introduction

{¶ 1} The United States District Court for the Southern District of Ohio, Western Division, submitted three certified questions of Ohio law in accordance with S.Ct.Prac.R. 9.01:

1. What is the statute of limitations for claims of negligent misidentification?

2. Is the doctrine of absolute privilege applicable to claims of negligent misidentification and, if so, does it extend to statements made to law enforcement officers implicating another person in criminal activity?

3. Is the doctrine of qualified privilege applicable to claims of negligent misidentification?

{¶ 2} For the reasons that follow, we conclude that a plaintiff does not have a cause of action in tort for negligent misidentification and that it would contravene public policy to allow such a claim. Accordingly, because we hold that no cause of action for negligent misidentification exists in Ohio, the certified questions are moot.

## II. Facts and Procedural History

{¶ 3} These certified questions originate from a lawsuit filed on March 13, 2015. Respondents here, Evan Foley, Andrew Foley, and Michael Fagans, alleged that on March 14, 2013, they knocked on the door of a townhouse on the University of Dayton's campus, angering the occupant, petitioner Michael Groff, who then called the police. Based on that call, the Foleys and Fagans were arrested for burglary. On March 22, 2014, the criminal charges against Andrew Foley and Fagans were eventually dismissed, and the charge against Evan Foley was resolved.

{¶ 4} Respondents asserted claims of negligence against Groff and petitioner Dylan Parfitt, Groff's roommate, in the federal district court. Petitioners filed motions for judgment on the pleadings or, in the alternative, to certify questions of state law to this court, asserting that a claim of negligent

misidentification sounds in defamation and, because defamation is subject to a one-year statute of limitations, respondents' claim was time-barred. Petitioners also argued that because the law in this area is unsettled, the federal court should certify several questions to the Supreme Court of Ohio. The federal district court has now certified three questions to this court and we agreed to answer those questions. 144 Ohio St.3d 1503, 2016-Ohio-652, 45 N.E.3d 1048.

### III. Law and Analysis

{¶ 5} The first Ohio court to recognize the tort of negligent misidentification was the Sixth District Court of Appeals in *Wigfall v. Soc. Natl. Bank*, 107 Ohio App.3d 667, 669 N.E.2d 313 (6th Dist.1995). The court concluded:

> Our careful reading of [*Mouse v. Cent. Sav. & Trust Co.*, 120 Ohio St. 599, 167 N.E. 868 (1929)] and of [*Walls v. Columbus*, 10 Ohio App.3d 180, 461 N.E.2d 13 (10th Dist.1983)] leads us to the conclusion that there is a tort cause of action, separate from defamation, which exists in Ohio for persons who are negligently improperly identified as being responsible for committing a violation of the law, and who suffer injury as a result of the wrongful identification.

*Id*. at 673.

{¶ 6} We disagree.

{¶ 7} In *Mouse*, a bank refused to pay a check written by the plaintiff, even though he had sufficient funds in his account. The payee filed an affidavit claiming that Mouse had issued the checks without sufficient funds. Mouse was arrested and jailed. Mouse claimed in an action against the bank that the refusal to pay the checks was the proximate cause of his arrest and confinement. The

trial court directed a verdict for the bank on the ground that the bank's action was not the proximate cause of Mouse's arrest, a court of appeals affirmed, and Mouse appealed.

{¶ 8} We recognized that Mouse was arrested on a charge that was "concededly erroneous," 120 Ohio St. at 611, 167 N.E. 868, and Mouse could have a claim for false arrest. *Id.*

{¶ 9} In reversing a judgment of the court of appeals, we held that the intervention of a person responsible for issuing the warrant did not absolve the bank "upon the ground of lack of proximate cause, if the injury ensued in the ordinary course of events and the intervening cause was set in motion by the defendant." *Mouse* at paragraph one of the syllabus. Moreover, although G.C. 710-132 shielded banks from liability when a bank, without malice, mistakenly denied payment of a check unless the depositor "allege[d] and prove[d] actual damage," *id.*, the arrest and imprisonment of Mouse "constitute[d] an actual damage." *Mouse* at paragraph three of the syllabus. Therefore, the court remanded the case to the trial court for a determination on false arrest, stating:

> What could be a more real and existing damage to a person of good reputation than confinement in the county jail upon a charge concededly erroneous? Such damage is actual, so real, present, and existing, in fact, that the unlawful restraint by one person of the physical liberty of another gives rise to a cause of action all its own, namely, *that of false arrest*.

(Emphasis added). *Mouse* at 611.

{¶ 10} In *Wigfall*, the Sixth District also misread the Tenth District Court of Appeals' decision in *Walls v. Columbus*, 10 Ohio App.3d 180, 461 N.E.2d 13 (10th Dist.1983). The plaintiff in *Walls* claimed that the state bureau of motor

4

vehicles had acted negligently when it supplied incorrect information to a police officer, which led to Walls's arrest. The Court of Claims dismissed the action prior to trial. Relying on a general discussion of torts and on Annotation, *Liability for Negligently Causing Arrest or Prosecution of Another*, 99 A.L.R. 3d 1113 (1980), the appellate court reversed the judgment of the Court of Claims and remanded the matter for trial, stating that there was potential liability under the allegations of the complaint. The appellate court noted, "[I]t has been recognized in Ohio through the *Mouse* case, *supra*, that giving false information which results in the arrest and imprisonment of another may be grounds for tort liability." *Id*. at 182.

{¶ 11} Other Ohio appellate courts have discussed claims for negligent misidentification. In *Breno v. Mentor*, 8th Dist. Cuyahoga No. 81861, 2003-Ohio-4051, ¶ 20, while recognizing a cause of action for negligent misidentification, the court noted that the cause was not pled. And in *Woods v. Summertime Sweet Treats, Inc*., 7th Dist. Mahoning No. 08-MA-169, 2009-Ohio-6030, ¶ 36-38, the court held that summary judgment was proper because no set of facts were established to support a claim for negligent misidentification.

{¶ 12} However, this court has never recognized the tort of negligent misidentification, and we decline to do so today. In the past, we have recognized a new avenue of civil redress when there was a compelling public policy reason to do so. *See Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653 (1995) (recognizing a cause of action for wrongful discharge in violation of public policy based on sexual harassment or discrimination); *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051 (recognizing the tort of false-light invasion of privacy); *Gallimore v. Children's Hosp. Med. Ctr*., 67 Ohio St.3d 244, 617 N.E.2d 1052 (1993) (recognizing that parents can recover damages for loss of filial consortium); *Flandermeyer v. Cooper*, 85 Ohio St. 327, 98 N.E. 102 (1912) (recognizing an action against a person who wrongfully and maliciously interferes

with the marital relationship). Recognition of the tort of negligent misidentification, however, would contravene public policy.

{¶ 13} " ' "Public policy favors the exposure of crime." ' " *Dailey v. First Bank of Ohio*, 10th Dist. Franklin No. 04AP-1309, 2005-Ohio-3152, ¶ 14, quoting *Miller v. Omar Baking Co.*, 24 Ohio Law Abs. 375, 380 (2d Dist.1937), quoting 18 Ruling Case Law 11 (1917). It encourages all citizens to report crime and to come forward to aid law-enforcement officers during the investigation of those crimes. *Manis v. Miller*, 327 So.2d 117 (Fla.App.1976). The tort of negligent misidentification would have a chilling effect on that public policy. *See Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn.1983); *Jaindl v. Mohr*, 541 Pa. 163, 167, 661 A.2d 1362 (1995), quoting *Davis v. Equibank*, 412 Pa.Super. 390, 392–393, 603 A.2d 637 (1992).

{¶ 14} That is not to say that public policy prevents the right of civil redress. "Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990). Since at least 1834, this court has recognized the tort of malicious prosecution. *Anderson v. Buchanan*, Wright 725 (1834). Malicious prosecution is established when a prosecution is initiated or continued with malice and without probable cause, the prosecution has ended in the injured party's favor, and in cases founded on civil proceedings, a seizure of the injured party or his property during the prior proceedings has occurred. *See Trussell* at 144. Malicious prosecution applies not only to the state, but also to an individual or corporation. *Id*. Recognizing the tort of negligent misidentification, however, would diminish the tort of malicious prosecution to a mere negligence action and in turn would expose the victim of a crime or an eyewitness to civil liability for an honest mistake, thereby turning victims of crime and eyewitnesses into

6

"guarantors of the accuracy of their identifications." *Turner v. Mellon*, 41 Cal.2d 45, 49, 257 P.2d 15 (1953).

**{¶ 15}** While we must balance the interests of public policy and the right to civil relief, we also believe that a line should be drawn so that citizens who in good faith report crimes or come forward as eyewitnesses to crimes can do so without fear of civil liability.

**{¶ 16}** Ohioans are not limited to the tort of malicious prosecution in seeking redress for an injury caused by another's false reporting of a crime. Since 1823, we have recognized the tort of defamation. *Goodenow v. Tappan*, 1 Ohio 60 (1823). Since 1863, we have recognized the tort of wrongful or false arrest or imprisonment. *William T. Spice & Son v. Steinruck*, 14 Ohio St. 213, 216 (1863). And, in 2007, this court also recognized the tort of false-light invasion of privacy. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 61.

**{¶ 17}** Our decision today that Ohio does not recognize the tort of negligent misidentification is in keeping with decisions of other courts across the United States. *See Ramsden v. W. Union*, 71 Cal.App.3d 873, 881, 138 Cal.Rptr. 426 (1977). *See also Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn.1983); *Campbell v. San Antonio*, 43 F.3d 973, 981 (5th Cir.1995); *Shelburg v. Scottsdale Police Dept.*, D.Ariz. No. CV-09-1800-PHV-NVW, 2010 WL 3327690, *11 (Aug. 23, 2010); *Jaindl*, 541 Pa. at 167, 661 A.2d 1362. Our decision is also in keeping with the decisions of those courts that have declined to replace the standard of malice with the lesser standard of negligence in claims of false arrest or imprisonment. *See LaFontaine v. Family Drug Stores, Inc.*, 33 Conn.Supp. 66, 78, 360 A.2d 899 (C.P.1976). *See also Baggett v. Natl. Bank & Trust Co.*, 174 Ga.App. 346, 348, 330 S.E.2d 108 (1985); *Manis v. Miller*, 327 So.2d 117, 118 (Fla.App.1976); *see also Shires v. Cobb*, 271 Or. 769, 772, 534 P.2d 188 (1975); *see also Powers v. Carvalho*, 117 R.I. 519, 529, 368 A.2d 1242 (1977).

## IV. Conclusion

{¶ 18} We conclude that there is no cause of action in Ohio for the tort of negligent misidentification. Accordingly, we decline to answer the questions of law certified by the United States District Court for the Southern District of Ohio, Western Division, because they are moot.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

O'NEILL, J., dissents, with an opinion joined by PFEIFER, J.

_____

**O'NEILL, J., dissenting.**

{¶ 19} Respectfully, I must dissent.

{¶ 20} Rather than further limiting recourse in tort for the citizens of the state of Ohio, I would proceed to answer the questions certified to us by the United States District Court for the Southern District of Ohio, Western Division. The majority adopts a narrow reading of the case law on negligent misidentification and then bolsters the correctness of its position by appealing selectively to public policy in favor of reporting crimes, all while ignoring the questions before us. I do not agree that this case is simple, and I will address the case law, public policy, and procedure in turn.

{¶ 21} In all cases alleging negligence, the fundamental guiding principle is that "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island RR. Co.*, 248 N.Y. 339, 344, 162 N.E. 99 (1928). So the entry-level question whether a tort such as negligent misidentification exists is answered by considering whether there are any reasonably foreseeable risks inherent in falsely reporting a crime. The tort of negligence really is that simple, and it is that broad.

{¶ 22} The majority's understanding of the tort of negligence is too rigid. The fact that we recognized the intentional tort of false arrest in *Mouse v. Cent.*

*Sav. & Trust Co.*, 120 Ohio St. 599, 167 N.E. 868 (1929), does not foreclose pleading a cause in negligence alleging the wrongful identification of an alleged wrongdoer by a person who should have known there was no crime. The same is true, for example, when someone accidentally strikes another with a fist, a car, or a bullet: the existence of the tort of battery does not foreclose pleading a cause in negligence if the evidence might show that the conduct was unintended rather than intended. And at the pleadings phase in a federal district court, where the underlying matter is pending, it may be wise to plead both the intentional and the unintentional tort because a court could decide at that phase that recovery on one of the causes of action is unavailable given the facts that were pled. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

{¶ 23} There is a glaring conclusion to draw from *Mouse*. The plaintiff had pled his claim in negligence, the defendant answered alleging contributory negligence, and this court analyzed the claim as one sounding in negligence while ruling on the issue of whether an intervening act cuts off proximate causation. *Mouse* at 600. In short, we reviewed *Mouse* applying traditional negligence law dating back some 200 years. *Id*. Ohio courts have followed the guidance of *Mouse* and have drawn an obvious conclusion from it: this court recognized a duty to not make allegations to law enforcement if one should have reasonably known that those allegations were untrue. *E.g.*, *Walls v. Columbus*, 10 Ohio App.3d 180, 461 N.E.2d 13 (10th Dist.1983).

{¶ 24} Although couching its decision in terms of recognizing or declining to recognize a cause of action, the majority opinion is mistaken as to the import of its decision. There is already a cause of action for negligence. With the sweep of a pen, the majority effectively negates what we previously recognized to be an actionable legal duty not to falsely accuse the innocent.

**{¶ 25}** The majority's discussion of the public policy supporting their decision is one dimensional. I can readily agree that public policy favors the reporting of crime. But public policy does not favor the inaccurate reporting of crime or the vindication of a personal quarrel through embellished or inaccurate reports of crime. Today, Ohio loses an important bulwark against these risks to the public. If we are going to talk public policy, let's talk about it from all realistic perspectives. The bottom line is that in today's electronically enhanced climate of heightened police response, there are some things you can say on a 9-1-1 call that will bring the cavalry out in force. The news regularly reports on those who are injured or killed during the police response to inaccurate or false reports of crime.[1] If our police are going to be able to respond appropriately to threats in

---

[1] In August 2014, a 9-1-1 caller reported to police in Beavercreek, Ohio, that a man was attempting to load a rifle and pointing it at children in a Walmart store. Wing, *911 Caller Will Not Be Charged for Giving Cops Bad Info Before Fatal Police Shooting*, The Huffington Post (Apr. 7, 2016; updated Apr. 18, 2016), available at http://www.huffingtonpost.com/entry/ronald-ritchie-john-crawford_us_57065a21e4b0b90ac2714e86 (accessed October 19, 2016). The man, John Crawford III, was holding a toy pellet gun that he had taken off a shelf in the store. Crawford was shot and killed by police.

In November 2014, a 9-1-1 caller reported to police in Cleveland, Ohio, that a person who was "probably a juvenile" was pointing a gun around outside a recreation center and that the gun was "probably fake." MacDonald, *Errors by police radio worker 'significant' factor in fatal shooting of Tamir Rice, prosecutor says*, Cleveland.com (Dec. 28, 2105), available at http://www.cleveland.com/metro/index.ssf/2015/12/errors_by_police_radio_workers.html (accessed October 19, 2016). The dispatcher told the responding officers that the person was scaring people with a gun but did not report that the person was probably a child or that the gun was probably fake. Responding officers shot and killed Tamir Rice immediately upon arriving at the scene.

In July 2016, a 9-1-1 caller reported to police in Avon, Ohio, that a man in traditional Arabian garb had pledged allegiance to ISIS during a cell-phone conversation. Grinberg & Johnson, *For Muslim visitor, ugly encounter leads to apology*, CNN (updated July 5, 2016), available at http://www.cnn.com/2016/07/03/us/ohio-false-isis-report/ (accessed October 19, 2016). Police responded with guns drawn and handcuffed a citizen of the United Arab Emirates before determining that the man had not made statements related to ISIS. The man, who had been seeking medical treatment in the United States, collapsed during the encounter and was hospitalized for a light stroke.

There are also examples of property damage due to false reports of crime. *See, e.g.*, *Victim of fake 911 call sues Ohio police over damage to home*, The Washington Post (September 7, 2016), available at https://www.washingtonpost.com/national/victim-of-fake-911-call-sues-ohio-police-over-damage-to-home/2016/09/07/458c5ace-74fd-11e6-9781-49e591781754_story.html (accessed October 19, 2016).

the modern era, it will be because they can trust information received. The appropriate balance of the range of public needs in this area is to enforce a duty to accurately report crime through the civil justice system. Let the word go out across the land that if you wrongfully accuse your neighbor of a crime, and the neighbor is summarily placed in jail based upon your negligent act, *your* day in court will arrive.

{¶ 26} Finally, the majority modifies tort law in a case that lacks an adequate foundation for such a sweeping holding. If this court wants to change the law, it should do so in a case that arises in the state's court system and comes before us on direct appeal. Although the existence of a duty is a question of law, the circumstances and context of a case are vital to determining whether a duty exists. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

> The existence of a duty in a negligence action is a question of law for the court to determine. See *Railroad Co. v. Harvey* (1907), 77 Ohio St. 235, 240, 83 N.E. 66, 68. There is no formula for ascertaining whether a duty exists. Duty " * * * is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed.1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf Revisited* (1953), 52 Mich.L.Rev. 1, 15). * * * " *Weirum v. RKO General, Inc.* (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 471, 539 P.2d 36, 39.

**{¶ 27}** We should answer the questions submitted by the federal court. I would hold that the two-year statute of limitations for actions for bodily injury, R.C. 2305.10(A), applies because the one-year statute of limitations in R.C. 2305.11(A) does not, by its plain terms, govern suits in negligence. I would further hold that absolute and qualified privileges are not applicable, because there is no public interest sufficiently important to justify placing the foreseeable risks of inaccurate reporting of crime upon the misidentified person. Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, Section 114, 815 (5th Ed.1984) ("The defense of privilege * * * rests upon the * * * idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation"). And I believe that juries are better able to determine the reasonableness of a person's inaccuracies in reporting a crime than are courts.

**{¶ 28}** Respectfully, I dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Green & Green, Jane M. Lynch, and Jared A. Wagner, for petitioner Dylan Parfitt.

Benjamin, Yocum & Heather, L.L.C., Timothy P. Heather, and R. David Weber, for petitioner Michael R. Groff.

Spangenberg, Shibley & Liber, L.L.P., Michael A. Hill, and Dennis R. Lansdowne, for respondents Andrew Foley, Evan Foley, and Michael Fagans.

_____