WELLING ET AL., APPELLANTS, *v.* WEINFELD, APPELLEE.

[Cite as *Welling v. Weinfeld,* 113 Ohio St.3d 464, 2007-Ohio-2451.]

(No. 2005–1964—Submitted October 4, 2006—Decided June 6, 2007.)

――――――――――

――――――――――

PFEIFER, J.

### Factual and Procedural Background

{¶ 1} From neighborhood friction that spiraled into dueling litigation has emerged a significant question for this court: Does Ohio recognize the "false light" theory of the tort of invasion of privacy? Today we recognize that theory of recovery.

{¶ 2} The plaintiff-appellee, Lauri Weinfeld, and defendants-appellants, Robert and Katherine Welling, are neighbors in Perry Township in Stark County. Weinfeld owns and operates a party center next to her home, which hosts banquets, parties, and outdoor weddings. The Wellings live next to the party center. Weinfeld and the Wellings each alleged on a number of theories that the activities of the other interfered with their legitimate use of their own property.

{¶ 3} Weinfeld sued, alleging that the Wellings' use of yard and farm equipment during party center events constituted nuisance, trespass, invasion of privacy, interference with business relations, and intentional infliction of emotion-

al distress. It is one of the Wellings' counterclaims, invasion of privacy, that is the focus of this case.

{¶ 4} At trial, the Wellings alleged two sets of facts supporting their invasion-of-privacy claim. First, they alleged that Weinfeld had focused floodlights on and had conducted videotape surveillance of their property.

{¶ 5} The second set of facts forms the basis of the issue in this case. During the spring of 2000, someone threw a rock through a plate-glass window at Weinfeld's party center. Weinfeld suspected that the culprit was the Wellings' son, Robert. Weinfeld created handbills, printed on 8½-by–11-inch paper, offering a reward for information regarding the perpetrator. The handbill read:

$500.00

REWARD

**for any information** which leads to the
conviction of the person(s) responsible
for throwing a rock through the window
of Lakeside Center Banquet Hall
(also known as the "Party Center")
in the Dee Mar Allotment, in Perry
Township, on Monday, May 8th or
Tuesday, May 9th, 2000.

---

**Any tips will be kept confidential.
Call the Perry Township Police
Department's Detective Bureau at
478–5121.
Reward will be paid in cash.**

---

{¶ 6} Weinfeld admitted that she had no proof that the Wellings were responsible for the damage. She further admitted that she distributed the handbills at two locations outside the neighborhood that were of special significance to the Wellings: at the Pepsi bottling plant where Robert Welling and his son worked and at the school the Welling children attended.

{¶ 7} The Wellings allege that Weinfeld's distribution of the handbills spread wrongful publicity about them that unreasonably placed them in a false light before the public.

{¶ 8} On November 22, 2002, a jury entered a defense verdict in favor of the Wellings on Weinfeld's claims and further found that Weinfeld had invaded the

Wellings' privacy. The jury interrogatory on the invasion-of-privacy claim did not delineate the facts upon which the jury based its verdict. The jury awarded the Wellings $5,412.38 in compensatory damages and $250,000 in punitive damages. Attorney fees were stipulated to be $10,000.

{¶ 9} On December 6, 2002, Weinfeld moved for judgment notwithstanding the verdict or in the alternative for a new trial or remittitur. On June 5, 2003, the trial court overruled the plaintiff's motion for judgment notwithstanding the verdict, but granted a remittitur of the punitive damages award to $35,000, subject to acceptance by the Wellings. The Wellings did not accept the remittitur. The trial court therefore granted a new trial on the Wellings' invasion-of-privacy claim.

{¶ 10} Weinfeld and the Wellings both appealed the trial court's decision. Weinfeld argued that the trial court should have granted her motion for judgment notwithstanding the verdict on the Wellings' invasion-of-privacy claim. The appellate court held that the trial court did not abuse its discretion in denying the motion, holding that an invasion-of-privacy action could lie based upon Weinfeld's use of the video camera and floodlights. However, as to false-light invasion of privacy based upon the distribution of the handbill, the appellate court made no determination, noting that this court had not yet adopted the false-light invasion-of-privacy theory of recovery. The court wrote:

{¶ 11} "[I]t remains an open question, rather than an absolute rejection whether such theory would be recognized. We do not choose to decide what constitutes an appropriate case wherein the Ohio Supreme Court would finalize such issue as we are not required in this case to reach such a decision and would be reluctant, in any event, to do so without affirmative guidance from the Supreme Court." *Weinfeld v. Welling,* Stark App. No. 2004CA00340, 2005-Ohio-4721, 2005 WL 2175141, ¶ 57.

{¶ 12} The appellate court thus removed the issue of false-light invasion of privacy from this case, limiting the retrial to the issue of invasion of privacy based upon Weinfeld's intrusion upon the Wellings' seclusion. The Wellings appealed, urging this court to recognize that a cause of action exists under Ohio law for false-light invasion of privacy.

{¶ 13} The cause is before this court upon the acceptance of a discretionary appeal. 108 Ohio St.3d 1435, 2006-Ohio-421, 842 N.E.2d 61.

## Law and Analysis

{¶ 14} In *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, this court first recognized a cause of action for invasion of privacy. The court listed three instances in which the claim could be brought:

{¶ 15} "An actionable invasion of the right of privacy is [1] the unwarranted appropriation or exploitation of one's personality, [2] the publicizing of one's private affairs with which the public has no legitimate concern, or [3] the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Id. at paragraph two of the syllabus.

{¶ 16} Noticeably absent from *Housh* is the recognition of a cause of action based upon publicity that places a person in a false light before the public. But *Housh* was decided before the 1960 publication of Dean William L. Prosser's influential law review article, Privacy (1960), 48 Cal.L.Rev. 383, wherein Prosser described four distinct types of invasion of privacy:

{¶ 17} "1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

{¶ 18} "2. Public disclosure of embarrassing private facts about the plaintiff.

{¶ 19} "3. Publicity which places the plaintiff in a false light in the public eye.

{¶ 20} "4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." Id. at 389.

{¶ 21} The Restatement of the Law 2d, Torts (1977), Section 652A incorporated the false-light theory as one of the four causes of action included under the umbrella of invasion of privacy. Restatement of the Law 2d, Torts, Section 652E sets forth the elements of false-light invasion of privacy:

{¶ 22} "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

{¶ 23} "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and · ··

{¶ 24} "(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

{¶ 25} This court has not addressed head-on the viability of a cause of action in Ohio for false-light invasion of privacy, although it referred to the claim in a footnote in *Sustin v. Fee* (1982), 69 Ohio St.2d 143, 23 O.O.3d 182, 431 N.E.2d 992. *Sustin* was an invasion-of-seclusion claim, not a false-light claim; the plaintiffs complained that a village zoning inspector was conducting surveillance of their property with binoculars. The court wrote that *Housh* had established the tort of invasion of privacy in Ohio and quoted that case's second syllabus paragraph, which set forth three actionable types of invasion of privacy. Id. at 145, 23 O.O.3d 182, 431 N.E.2d 992. In a footnote, the court wrote that there were *four* separate recognized branches of invasion of privacy, including false light:

{¶ 26} "Today the intrusion into a person's seclusion is recognized as but one of four separate branches of tortious invasion of privacy. These are set out in Section 652A of the Restatement of Torts 2d, at page 376, as follows:

{¶ 27} " '(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

{¶ 28} " '(2) The right of privacy is invaded by

{¶ 29} " '(a) unreasonable intrusion upon the seclusion of another * * *

{¶ 30} " '(b) appropriation of the other's name or likeness * * *

{¶ 31} " '(c) unreasonable publicity given to the other's private life * * *

{¶ 32} " '(d) publicity that unreasonably places the other in a false light before the public * * *.' See, also, Prosser on Torts (4 Ed.), 802, Sec. 117." (Ellipses sic.) *Sustin,* 69 Ohio St.2d at 145, 23 O.O.3d 182, 431 N.E.2d 992, fn. 4.

{¶ 33} The court's affirmative acknowledgement of false-light invasion of privacy indicated an inclination toward recognizing it as a separate cause of action. However, in *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, this court made clear that whatever it had said in *Sustin* did not constitute a holding on the issue:

{¶ 34} "[T]his court has not recognized a cause of action for invasion of privacy under a 'false light' theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the 'false light' theory of recovery in Ohio at this time." Id. at 372, 6 OBR 421, 453 N.E.2d 666.

{¶ 35} In *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 634 N.E.2d 203, an appellant again asked the court to recognize false-light invasion of privacy, but the court held that the statements at issue were made in an affidavit pursuant to a legal proceeding and were thus privileged and not actionable: "Given our determination that the statements contained in [the] affidavit cannot form the basis for civil liability, this case (like *Yeager* ) is obviously not the appropriate case to consider adopting, or rejecting, the false light theory of recovery." Id. at 507, 634 N.E.2d 203.

{¶ 36} A majority of jurisdictions in the United States have recognized false-light invasion of privacy as a distinct, actionable tort. See *West v. Media Gen. Convergence, Inc.* (Tenn.2001), 53 S.W.3d 640, 644; Elder, Privacy Torts (2006), Section 4:1. However, the two most recent state supreme courts to address the issue, Tennessee and Colorado, have made divergent holdings. In *West,* the Tennessee Supreme Court recognized false-light invasion of privacy as a cause of action. *West* at 645. In *Denver Publishing Co. v. Bueno* (Colo.2002), 54 P.3d 893, however, the Colorado Supreme Court, in "a deliberate exercise of caution," ruled that false light "is too amorphous a tort for Colorado, and it risks inflicting

an unacceptable chill on those in the media seeking to avoid liability." Id. at 904. Those two cases mark well the boundaries of the opposing viewpoints on the issue.

{¶ 37} *Bueno* points to the central concern of the cases and commentary against false light—that there is an unacceptable overlap between false light and defamation. The four-to-three majority in *Bueno* writes, "Courts that recognize false light view one's reputation in the community and one's personal sense of offense as separate interests. * * * But even those states that accept as important the difference between these two interests, reputation and personal feelings, recognize an 'affinity' between them." Id. at 901–902. *Bueno* describes the interest protected in a false-light claim as the "individual's peace of mind, *i.e.,* his or her interest 'in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is,' " while the action for defamation is to protect a person's interest in a good reputation. Id., quoting Restatement of the Law 2d, Torts, Section 652E, Comment *b.*

{¶ 38} While conceding the distinction of those interests, *Bueno* held that "recognition of the different interests protected rests primarily on parsing a too subtle distinction between an individual's personal sensibilities and his or her reputation in the community." Id. at 902. But *Bueno* acknowledges that there are scenarios in which false light fits and defamation fails:

{¶ 39} "The first involves cases where the defendant reveals intimate and personal, but false, details of plaintiff's private life, for example, portraying plaintiff as the victim of sexual harassment, *Crump* [*v. Beckley Newspapers, Inc.,* 173 W.Va. 699], 320 S.E.2d [70] 80 [ (1984) ], or as being poverty-stricken, *Cantrell v. Forest City Publ'g Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), or as having a terminal illness or suffering from depression. These depictions are not necessarily defamatory, but are potentially highly offensive. The second category encompasses portrayals of the plaintiff in a *more positive* light than he deserves. *See, e.g., Spahn v. Julian Messner, Inc.,* 43 Misc.2d 219, 250 N.Y.S.2d 529, 538–40, 543 (N.Y.Sup.Ct.1964), *aff'd,* 260 N.Y.S.2d 451, 23 A.D.2d 216 (1965), *aff'd,* 18 N.Y.2d 324, 274 N.Y.S.2d 877, 221 N.E.2d 543 (1966), *vacated,* 387 U.S. 239, 87 S.Ct. 1706, 18 L.Ed.2d 744 (1967) (trial court finding invasion of privacy where plaintiff was depicted in book as a war hero who earned Bronze Star and 'raced out into the teeth of the enemy barrage'—two of a multitude of characterizations that were utterly false and embarrassing to plaintiff)." *Bueno,* 54 P.3d at 902–903.

{¶ 40} Ultimately, *Bueno* characterized potential false-light claims as encompassing "a decidedly narrow band of cases" and held that such plaintiffs would be

protected by the existing remedies of defamation, appropriation, and intentional infliction of emotional distress. Id. at 903.

{¶ 41} Beyond *Bueno*'s reluctance to recognize new torts was its determination that a false-light tort would have negative implications on First Amendment principles. The court reasoned that the theory of false-light invasion of privacy fails the test of providing a clear identification of wrongful conduct:

{¶ 42} "The sole area in which it differs from defamation is an area fraught with ambiguity and subjectivity. Recognizing 'highly offensive' information, even framed within the context of what a reasonable person would find highly offensive, necessarily involves a subjective component. The publication of highly offensive material is more difficult to avoid than the publication of defamatory information that damages a person's reputation in the community. In order to prevent liability under a false light tort, the media would need to anticipate whether statements are 'highly offensive' to a reasonable person of ordinary sensibilities even though their publication does no harm to the individual's reputation. To the contrary, defamatory statements are more easily recognizable by an author or publisher because such statements are those that would damage someone's reputation in the community. In other words, defamation is measured by its results; whereas false light invasion of privacy is measured by perception. It is even possible that what would be highly offensive in one location would not be in another; or what would have been highly offensive in 1962 would not be highly offensive in 2002. In other words, the standard is difficult to quantify, and shifts based upon the subjective perceptions of a community." *Bueno*, 54 P.3d at 903–904.

{¶ 43} *Bueno* concludes that the ambiguity and subjectivity surrounding false-light invasion of privacy would "invariably chill open and robust reporting." Id. Other states rejecting false light as a theory of recovery have also pointed to First Amendment implications in their reasoning. *Cain v. Hearst Corp.* (Tex. 1994), 878 S.W.2d 577, 579–580; *Lake v. Wal–Mart Stores, Inc.* (Minn.1998), 582 N.W.2d 231, 235–236; *Renwick v. News & Observer Publishing Co.* (1984), 310 N.C. 312, 325–326, 312 S.E.2d 405.

{¶ 44} In *West*, 53 S.W.3d 640, the Tennessee Supreme Court held that a cause of action for false-light invasion of privacy protects an important individual right complementary to other privacy rights and that there are adequate protections guaranteeing the First Amendment rights of potential defendants. We agree.

{¶ 45} The court wrote in *West*:

{¶ 46} "While the law of defamation and false light invasion of privacy conceivably overlap in some ways, we conclude that the differences between the two torts warrant their separate recognition. The Supreme Court of West Virginia noted the following differences in *Crump v. Beckley Newspapers, Inc.*:

{¶ 47} " ' "In defamation law only statements that are false are actionable[;] truth is, almost universally, a defense. In privacy law, other than in false light cases, the facts published are true; indeed it is the very truth of the facts that creates the claimed invasion of privacy. Secondly, in defamation cases the interest sought to be protected is the objective one of reputation, either economic, political, or personal, in the outside world. In privacy cases the interest affected is the subjective one of injury to [the] inner person. Thirdly, where the issue is truth or falsity, the marketplace of ideas furnishes a forum in which the battle can be fought. In privacy cases, resort to the marketplace simply accentuates the injury." ' 173 W.Va. 699 [711], 320 S.E.2d 70, 83 (1984) (quoting Thomas Emerson, *The Right of Privacy and Freedom of the Press*, 14 Harv. C.R.-C.L. L.Rev. 329, 333 (1979))." *West*, 53 S.W.3d at 645–646.

{¶ 48} We agree with *West* that the viability of a false-light claim maintains the integrity of the right to privacy, complementing the other right-to-privacy torts. In Ohio, we have already recognized that a claim for invasion of privacy can arise when *true* private details of a person's life are publicized. The right to privacy naturally extends to the ability to control false statements made about oneself.

{¶ 49} Without false light, the right to privacy is not whole, as it is not fully protected by defamation laws:

{¶ 50} "Certainly situations may exist in which persons have had attributed to them certain qualities, characteristics, or beliefs that, while not injurious to their reputation, place those persons in an undesirable false light. However, in situations such as these, victims of invasion of privacy would be without recourse under defamation law. False light therefore provides a viable, and we believe necessary, action for relief apart from defamation." *West*, 53 S.W.3d at 646.

{¶ 51} Will a recognition of false-light invasion of privacy result in a parade of persons with hurt feelings clogging our courthouses? There is no indication that that scenario is the case in the states that already recognize false-light claims. The requirements imposed by the Restatement make a false-light claim difficult to prove.

{¶ 52} First, the statement made must be untrue. Second, the information must be "publicized," which is different from "published":

{¶ 53} " 'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used * * *in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication

that reaches, or is sure to reach, the public." Restatement of the Law 2d, Torts, Section 652D, Comment *a.*

{¶ 54} Another element of a successful false-light claim is that the misrepresentation made must be serious enough to be highly offensive to a reasonable person:

{¶ 55} "The rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. * * * The plaintiff's privacy is not invaded when the unimportant false statements are made, even when they are made deliberately. It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy." Restatement of the Law 2d, Torts, Section 652E, Comment *c.*

{¶ 56} The Restatement also accounts for multiple claims arising under the same set of facts.

{¶ 57} " The interest protected by this Section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is. In many cases to which the rule stated here applies, the publicity given to the plaintiff is defamatory, so that he would have an action for libel or slander * * *. In such a case the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity." Restatement of the Law 2d, Torts, Section 652E, Comment *b.*

{¶ 58} Like the court in *West,* we believe that the First Amendment concerns that some courts have raised in regard to false-light claims are overblown. False-light defendants enjoy protections at least as extensive as defamation defendants. *West* makes the standard of fault identical for defamation and false-light claims: a negligence standard in regard to statements made about private citizens and an actual-malice standard for statements made about public figures. We choose to follow the Restatement standard, requiring that the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed," in cases of both private and public figures. Restatement of the Law 2d, Torts, Section 652E(b). In part, this heightened requirement is a recognition that a statement that is not defamatory is less apt to be a red flag for editors and checked for accuracy:

{¶ 59} "It is undoubtedly true that misrepresentations putting plaintiffs in a false light but not amounting to libel or slander are more difficult for an editor to

notice and prevent. The false-light actual-malice requirement, however, is meant to address this concern. Negligent reporters and editors who merely fail to observe an error or to use reasonable care in averting misrepresentations will be protected. There can only be liability if a plaintiff can show that the publication knew of the falsity or acted with reckless disregard for the truth." Ray, Let There Be False Light: Resisting the Growing Trend Against an Important Tort (2000), 84 Minn.L.Rev. 713, 731.

{¶ 60} Adequate First Amendment protections are in place in regard to a cause of action for false-light invasion of privacy. The world has changed since *Renwick*, one of the early decisions in which the court refused to recognize false-light claims due in part to First Amendment concerns. In *Renwick*, 310 N.C. 312, 312 S.E.2d 405, the court stated that the right to privacy had first been developed during the period of the excesses of yellow journalism and that formal training in journalism and ethics had ameliorated the concerns of the early leading legal lights as to the damage that could be done to individuals by the press. Id. at 325, 312 S.E.2d 405. At the time of *Renwick* in 1984, Greener's law—"Never argue with a man who buys ink by the barrel"—still applied. Today, thanks to the accessibility of the Internet, the barriers to generating publicity are slight, and the ethical standards regarding the acceptability of certain discourse have been lowered. As the ability to do harm has grown, so must the law's ability to protect the innocent.

{¶ 61} We therefore recognize the tort of false-light invasion of privacy and adopt Restatement of the Law 2d, Torts, Section 652E. In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

{¶ 62} Accordingly, we reverse the court of appeals and remand the cause.

Judgment reversed
and cause remanded.

MOYER, C.J., SWEENEY, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

O'CONNOR and LANZINGER, JJ., dissent and would dismiss the cause as having been improvidently accepted.

JAMES J. SWEENEY, J., of the Eighth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

474

Baker, Dublikar, Beck, Wiley & Mathews and Ralph F. Dublikar, for appellants.

Brouse McDowell and Clair E. Dickinson, for appellee.