[Cite as *McIntyre v. Bur. of Workers' Comp.*, 2012-Ohio-6359.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STEDSON R. MCINTYRE

 Plaintiff

 v.

OHIO BUREAU OF WORKERS' COMPENSATION

 Defendant

Case No. 2011-11394

Judge Patrick M. McGrath
Magistrate Holly True Shaver

DECISION

{¶ 1} On August 13, 2012, plaintiff filed a motion for summary judgment pursuant to Civ.R. 56(A). On September 4, 2012, defendant filed both a response and a cross-motion for summary judgment pursuant to Civ.R. 56(B).[1] On September 10, 2012, plaintiff filed a response to defendant's motion. The motions are now before the court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from

---

[1]On August 24, 2012, defendant filed a motion for an extension of time in which to file a response, which is GRANTED, instanter.

the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} From 1979 to 2007, plaintiff was the owner-operator of a corporation known as Bureau of Research, a private investigation business. Plaintiff's clients included both Cuyahoga County and the city of Cleveland. At his clients' requests, plaintiff would conduct surveillance on city and county employees whose claims for workers' compensation had been granted to determine whether they were physically able to return to work.

{¶ 5} In approximately the mid-1990s, plaintiff began a relationship with a former claims specialist for defendant in the Cleveland area, Marlene Woodruff, whereby he or his agents would call Woodruff directly and ask her to obtain claim information for him. In approximately 2004, Woodruff began to ask plaintiff for compensation. In exchange for payment, Woodruff provided plaintiff with information about workers' compensation claimants, including individuals' claim numbers, types of injury, physician of record, diagnosis, status of the claim, and claim history, regardless of the claimant's employer. When this information was given to plaintiff, Woodruff was not provided with any authorization signed by the claimants that showed that either plaintiff or his agents were permitted to access the information.

{¶ 6} By 2007, Woodruff began to ask plaintiff for compensation at more frequent intervals. Plaintiff telephoned a friend of his, Mark Bentley, who worked for defendant to report what was occurring. As a result, the Ohio State Highway Patrol (OSHP) began a criminal investigation regarding Woodruff. OSHP contacted plaintiff and shortly thereafter, plaintiff decided to "walk away" from his company. Plaintiff erased all data

from his computers and hired the company "Shred-It" to destroy his paper records. During the investigation, plaintiff provided OSHP with documents that reflected the payments that he had made to Woodruff. OSHP completed its investigation in March 2008. As a result of the investigation, Woodruff pleaded guilty to a charge of soliciting or accepting improper compensation and was ordered to pay a monetary fine.

{¶ 7} On January 2, 2008, while the investigation was ongoing, Tom Sico, Assistant General Counsel for defendant, sent a letter to approximately 49 workers' compensation claimants notifying them that their claim information, including social security numbers and home addresses, was accessed without the appropriate authorization. In the letter, Sico advised the claimants of the possibility of identity theft. The letter does not identify plaintiff as having accessed the information. However, the allegations that led to the investigation were reported by the news media in 2008 and 2009, and plaintiff's name was mentioned in those reports as having bought confidential information from Woodruff over a period of years.

{¶ 8} After receiving the letter from Sico, certain claimants, including Sandra Jones, filed a purported class action lawsuit in this court on behalf of individuals whose information might have been accessed illegally. Jones alleged that the disclosure exposed her to the risk of identity theft. In that litigation, plaintiff's deposition was taken on April 29, 2009. Plaintiff explained that he had been hired by Jones' employer, Cuyahoga County, to investigate her workers' compensation claim in July 2007. During the deposition, he provided a release that had been signed by Jones to give Cuyahoga County and/or its representatives authority to access her claim information regarding her accident that had occurred on April 11, 2007. Plaintiff insisted that he was authorized to access Jones' information because he was doing the investigation for Cuyahoga County.[2]

_____

[2]Defendant filed a motion for summary judgment in that litigation; Jones dismissed her claim and re-filed it in 2010; defendant then re-filed its motion for summary judgment which was granted on March

{¶ 9} On February 19, 2010, a claims specialist from defendant's Portsmouth office emailed her supervisor, Karen Mershon, to inquire about a complaint she had received from a claimant.  According to the claims specialist, plaintiff had been contacting the claimant to inquire about his workers' compensation claim.  The claims specialist had searched plaintiff's name on the Internet and found articles that he had bought claimants' information from a former employee of defendant named Marlene Woodruff.  The email states: "Our concern is that Mr. McIntyre is still using the previous information that Ms. Woodruff gave him as a scam involving our [injured worker] information that was previously taken."  (Plaintiff's Exhibit E.)  The response to the email is from another employee of defendant who related that plaintiff was a private investigator from Cleveland who was being sued by several claimants.  *Id.*

{¶ 10} Plaintiff asserts that from 2007 to 2010, defendant defamed him by advising his clients that he was under investigation for illegally accessing defendant's confidential records when, in fact, he had authorization to obtain those records.  Plaintiff further asserts that the actions of defendant's employees continued to place him in a false light even after the investigation concluded that he was authorized to access the records.  In contrast, defendant asserts that plaintiff cannot prove any cognizable claim for relief.

## I.  DEFAMATION

{¶ 11} "Defamation is defined as the unprivileged publication of a false and defamatory matter about another * * * which tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame or disgrace * * *." *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 353 (6th Dist.1992). "As suggested by the definition, a publication of statements, even where they may be

23, 2011.

false and defamatory, does not rise to the level of actionable defamation unless the publication is also unprivileged. Thus, the threshold issue in such cases is whether the statements at issue were privileged or unprivileged publications." *Sullivan v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2003-02161, 2005-Ohio-2122, ¶ 8.

{¶ 12} Privileged statements are those that are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975), quoting 50 American Jurisprudence 2d, Libel and Slander, Section 195 at 698.

{¶ 13} Plaintiff filed the affidavit of Tom Sico that was taken in the Jones litigation. Sico avers, in pertinent part, as follows:

{¶ 14} "3. Through my position as Assistant General Counsel, I am familiar with the policies and procedures of the [Bureau of Workers' Compensation] BWC. Specifically, I am familiar with BWC's policy relating to public records and the release of information.

{¶ 15} "4. * * * Effective October 2006, R.C. 4123.88, which governs the release of claim file information, was amended by S.B. 7 of the 126th General Assembly to provide that a claim file shall not be open to the public. BWC updated its public records policy to comply with this law effective August 2007.

{¶ 16} "5. Pursuant to BWC's policy, if an individual from the general public requested an individual's claim file prior to the change in R.C. 4123.88 in S.B. 7, the following information would be released as public record: 1) claim/risk number; 2) the name, address phone number of the injured worker; employer, representatives, MCOs,

and providers; 3) claim status; 4) the allowed conditions/ICD-9 Codes; 5) redacted medical records generated to determine the injured worker's entitlement to benefits; 6) payments, including compensation, medical benefits, attorneys fees, etc.; 7) psychological conditions, if an allowed condition; and 8) reserves.

{¶ 17} "6.   Pursuant to the policy, if an individual from the general public requested an individual's claim prior to the change in R.C. 4123.88 in S.B. 7, the claim information that would have been properly withheld includes: 1) medical records generated in the course of treatment and 2) whether or not the individual is HIV positive.

{¶ 18} "7.   After the change in R.C. 4123.88 in S.B. 7, the general public could not access any information in a claim file.   However, at all times prior to or after the changes in R.C. 4123.88 in S.B. 7, if a person had authorization from the injured worker or the employer, the person could examine or have access to all records of the claim file permitted by the release or authorization.

{¶ 19} "8.   On November, 21, 2007, the BWC learned that Stedson McIntyre, a private investigator working in the Cleveland, Ohio area may have purchased claim/injured worker information stored on the BWC computer system from former BWC claims specialist Marlene Woodruff.

{¶ 20} "9.   An investigation was conducted to investigate the potential security breach involving Stedson McIntyre and Marlene Woodruff.

{¶ 21} "10.   Through the investigation, it was determined that over the span of approximately ten years, Mr. McIntyre, generally working as a private investigator for the claimants' employers, requested and received BWC claim information for claimants from Ms. Woodruff.

{¶ 22} "11.   The BWC learned that Plaintiff Sandra Jones' claim information may have been obtained by Mr. McIntyre from Marlene Woodruff.

{¶ 23} "12.   I sent a letter to Ms. Jones on January 2, 2008 notifying her that her BWC claim information may have been accessed by an external party.   A true and

accurate copy of the letter sent on January 2, 2008 to Ms. Jones from me is attached as Exhibit 2." (Plaintiff's Exhibit G.)

{¶ 24} Construing the facts most strongly in plaintiff's favor, the only reasonable conclusion is that the letter that Sico sent to claimants in 2008 was made in good faith. Defendant had an interest to uphold in ensuring that claimants' information, including social security numbers and home addresses, was not accessed illegally. The letter was limited in its scope for that purpose, was made under requirement of law, and was published in a proper manner to proper parties only. Therefore, the court finds that defendant's allegedly defamatory statements regarding plaintiff contained in the letter from Sico were privileged communications.

{¶ 25} With regard to the 2010 emails, the conclusion is the same. The emails were made in good faith based upon an inquiry from a claimant, defendant had an interest to uphold in ensuring that the claimant's information had not been obtained illegally, the emails were limited in their scope for that purpose, were made under requirement of law, and were published in a proper manner to proper parties only. Accordingly, the court finds that the 2010 emails were privileged communications.

{¶ 26} A qualified privilege can be defeated only by clear and convincing evidence of actual malice. *Bartlett v. Daniel Drake Mem. Hosp.*, 75 Ohio App.3d 334, 340 (1991). "Actual malice" is "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d. 111, 116 (1991).

{¶ 27} Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that defendant's employees did not act with reckless disregard as to the truth or falsity of the statements they made. Plaintiff has brought forth no evidence as allowed pursuant to Civ.R. 56 to suggest that defendant's actions constituted actual malice. Therefore, reasonable minds can come to but one conclusion and that conclusion is adverse to plaintiff on his claim of defamation.

## II. FALSE-LIGHT INVASION OF PRIVACY

{¶ 28} As to plaintiff's second cause of action, the Supreme Court of Ohio has recognized the tort of false-light invasion of privacy and adopted Restatement of the Law 2d, Torts, Section 652E. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, ¶ 61. The court held that "one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id.* In *Welling*, however, the court warned that the "requirements imposed by the Restatement make a false-light claim difficult to prove." *Id.* at ¶ 51. The court emphasized that "the statement made must be untrue [and] the information must be "publicized," which is different from "published." *Id.* at ¶ 52.

{¶ 29} According to the explanation offered by the Restatement of the Law 2d, Torts, Section 652D, Comment a, "'[p]ublicity,' as it is used in this Section, differs from 'publication,' as that term is used * * * in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public."

{¶ 30} Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that none of the statements by defendant's employees was made with any knowledge of untruthfulness or with reckless disregard as to any falsity.

Furthermore, plaintiff has provided no evidence to establish publicity. Therefore, reasonable minds can come to but one conclusion and that conclusion is adverse to plaintiff on his claim for false- light invasion of privacy.

{¶ 31} Accordingly, summary judgment shall be rendered in favor of defendant, and plaintiff's motion for summary judgment shall be denied.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STEDSON R. MCINTYRE

    Plaintiff

    v.

OHIO BUREAU OF WORKERS' COMPENSATION

    Defendant

Case No. 2011-11394

Judge Patrick M. McGrath
Magistrate Holly True Shaver

<u>JUDGMENT ENTRY</u>

{¶ 32} A non-oral hearing was conducted in this case upon both parties' cross-motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, plaintiff's motion for summary judgment is DENIED, defendant's motion for summary judgment is GRANTED, and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

                                        _____

                                        PATRICK M. MCGRATH
                                        Judge

cc:

Emily M. Simmons
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Stedson R. McIntyre
650 Clinton Lane
Highland Heights, Ohio 44143

002
Filed November 30, 2012
To S.C. Reporter March 22, 2013