[Cite as *Mills v. Sonoco Phoenix*, 2014-Ohio-366.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ROBERT MILLS, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| vs. | : | |
| | : | Case No. 2013 CA 00067 |
| SONOCO PHOENIX, et al. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common Pleas
Court, Case No.  2012CV02373


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     February 3, 2014


APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

DAVID K. SCHAFFNER                    BRUCE HEAREY
SCHAFFNER LAW OFFICES              CHARLES BILLINGTON
132 Fair Avenue NW                       OGLETREE, DEAKINS, NASH,
New Philadelphia, Ohio  44663          SMOAK & STEWART
                                                    4130 Key Tower, 127 Public Square
                                                    Cleveland, Ohio  44114

*Wise, J.*

**{¶1}** Appellant Robert Mills appeals the March 8, 2013, decision of the Stark County Common Pleas Court granting summary judgment in favor of Appellees Sonoco Phoenix, Inc. and Scott Schindler.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** The relevant facts are as follows:

**{¶3}** On August 21, 1995, Plaintiff-Appellant Robert Mills was hired as a technician in a packaging operation by Phoenix, a predecessor of Defendant-Appellee Sonoco Phoenix, Inc.  Prior to that date, Appellant had been employed by Central States Can, the predecessor of Phoenix, since 1989.

**{¶4}** When Appellee Sonoco Phoenix, Inc. ("Sonoco") bought out the predecessor, Phoenix Packaging, in 2001, Appellant remained employed with the same seniority rights.

**{¶5}** Appellee Scott Schindler was the plant manager at the time Mills' employment began with Appellee Sonoco.  Schindler had also been the operations manager at the Brookline facility and the Warner plant when Mills was hired by Sonoco after the Phoenix Packaging buyout in 1995. Schindler was in the same position and was Mills' supervisor at Phoenix prior to the merger.

**{¶6}** According to Mills, Schindler constantly made harassing remarks and gestures toward him. He claims that Schindler frequently referred to Mills as "old man", stated that he wanted "new blood" in the plant, wanted Mills to take voluntary lay-off, and removed him from three committees for which Mills had received guaranteed overtime. (See Mills Deposition).

**{¶7}** Mills further stated that although he finally received a requested raise to top rate on February 8, 2011, the increased pay did not show up in his paycheck. Mills stated that he left a message on the production manager Tim Bryan's phone stating that he was going to contact Ed Harhager, the area manager, about the raise not being in his paycheck. (Mills Depo. at 40-41).

**{¶8}** According to Mills, shortly thereafter on March 10, 2011, Schindler, accompanied by two Sonoco supervisors, approached Mills in the "QA lab," a structure on Sonoco's shop floor that was approximately 12 ft. by 16 ft. with large windows on its sides. (Mills Depo. at 41, 120-21). Mills alleges that while in the QA lab, Schindler blocked him in the room, screamed at him, accused him of "insubordination," got within approximately "four inches" of his face, pointed at him, threatened to fire him, called him a "son of a bitch" and spit saliva in his face. (Mills Depo. at 40-46; D. Wagner Depo. at 10-11). Schindler then allegedly "stormed" out of the QA lab, then he and the two supervisors walked approximately 500 feet with Mills to Schindler's office. (Mills Depo. at 43-44). Once in Schindler's office, Mills alleged that he had a one-hour conversation with Schindler, during which Schindler "yelled and screamed" at him and called him names like "old man" and "new blood." (Mills Depo. at 46). Following this incident, Mills testified that he went back to the shop floor, and continued to do his job without further incident. (Mills Depo. at 124-25).

**{¶9}** Mills stated that he reported this incident to upper management in April, 2011, and that soon thereafter Schindler was removed as plant manager. (Mills Depo. at 14-15, 47-48; 55-56, 60, 104, 114,132).

**{¶10}** As a result of not being promoted and not receiving increase to top rate and the alleged ongoing harassment by Schindler, Appellant Mills claims he suffered from stress and mental anguish. More specifically, he claims that he suffered particular stress after the March 10, 2011 incident with Schindler. He testified he has "flashbacks" from that particular incident. (Mills Depo. at 65-66, 69).

**{¶11}** On July 27, 2013, Appellant Mills filed a Complaint in the Stark County Court of Common Pleas alleging age discrimination and intentional infliction of emotional distress.

**{¶12}** On February 1, 2013, Appellees filed a motion for summary judgment.

**{¶13}** By Judgment Entry filed March 8, 2013, the trial court granted Appellees' motion for summary judgment.

**{¶14}** It is from this decision that Appellant now appeals, assigning the following error for review:

## ASSIGNMENT OF ERROR

**{¶15}** "I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS."

### "Summary Judgment  Standard"

**{¶16}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36.  Civ.R. 56(C) provides, in pertinent part:

**{¶17}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

**{¶18}** Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing D*resher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

**{¶19}** It is based upon this standard that we review Appellant's Assignment of Error.

**I.**

{¶20} In his sole Assignment of Error, Appellant argues that the trial court erred in granting summary judgment in favor of Appellees on his claim of Intentional Infliction of Emotional Distress. We disagree.

{¶21} To state a claim for intentional infliction of emotional distress, a plaintiff must be able to establish that: (1) the defendant either intended to cause emotional distress, or knew or should have known that its actions would result in serious emotional distress; (2) defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; (3) defendant's actions proximately caused injury to plaintiff; and (4) the mental anguish plaintiff suffered is serious and of such a nature that no reasonable person could be expected to endure. *Ashcroft v. Mt. Sinai Medical Center* (1990), 68 Ohio App.3d 359, 366, 588 N.E.2d 280.

{¶22} In other words, to prove a claim of intentional infliction of emotional distress, the plaintiff must show that the defendant intentionally or recklessly caused him serious emotional distress by extreme and outrageous conduct." *Stafford v. Columbus Bonding Ctr.,* 177 Ohio App.3d 799, 809, 2008-Ohio-3948, 896 N.E.2d 191 (10th Dist.), citing *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983).

{¶23} The Ohio Supreme Court has described the outrageous behavior that supports this type of claim as requiring something beyond a "tortious or even criminal" intent to cause harm. *Yeager v. Local Union 20,* (1983) 6 Ohio St.3d 369, 374-75, 453 N.E.2d 666 (1983), abrogated on other grounds by *Welling v. Weinfeld,* 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051. It is not sufficient for a plaintiff to set forth facts

tending to prove that the defendant's "conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.*

{¶24} "[I]n order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious." "[S]erious emotional distress" is "emotional injury which is both severe and debilitating." "[S]erious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." (Citations omitted). *Smith v. Redecker,* 4th Dist. No. 08CA33, 2010–Ohio–505, at ¶ 60.

{¶25} Additionally, "[e]xpert medical testimony is not indispensable to a claim of serious emotional distress. * * * More particularly, as an alternative and in lieu of expert testimony, a plaintiff may submit the testimony of lay witnesses who are acquainted with the plaintiff as to any 'marked changes in the emotional or habitual makeup' of the plaintiff following a defendant's allegedly culpable conduct." *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 6, 771 N.E.2d 874 (citations omitted).

{¶26} In support of his claim, Appellant submitted the testimony of other plant workers who witnessed the March 10th events. The testimony of these witnesses was that they observed a heated argument which involved some "arm waving", "things heating up", finger pointing, and harassing gestures. Additionally, Appellant testified that he suffered stress and flashbacks as a result of the March 10th incident. Appellant also submitted an affidavit from his wife stating that as a result of this incident, Appellant

was depressed, suffered from flashbacks and interrupted sleep, lacked enjoyment of life and feared for his own physical safety.

**{¶27}** Upon review, construing the evidence most strongly in favor of the Appellant and accepting his factual allegations as true, we find that Appellant failed to produce evidence of conduct that was so extreme and outrageous as to go beyond all possible bounds of human decency.

**{¶28}** Although we do not doubt that the alleged comments and spitting were offensive to Appellant and inappropriate for the workplace, we agree with the trial court that Appellant's evidence fails to demonstrate conduct that was so extreme and outrageous to go beyond all bounds of human decency, as required by Ohio law

**{¶29}** We further find that Appellant failed to present sufficient evidence to demonstrate that Appellees' actions caused him any severe emotional distress. Rather, the evidence presented showed that Appellant's job performance was never affected and he never missed a day of work as a result of such alleged emotional distress. Further, Appellant never sought treatment for any emotional distress.

**{¶30}** We further find that the statements contained in the affidavit of Appellant's wife are not based on her own observations or personal knowledge, rather they are based on statements made to her by her husband. We therefore find such affidavit to not be of evidentiary value admissible for purposes of Civ.R. 56.

**{¶31}** Based on the foregoing, we find the trial court did not err in granting summary judgment to Appellees on Appellant's claim of intentional infliction of emotional distress.

**{¶32}** Appellant's sole Assignment of Error is overruled.

**{¶33}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, J., concurs.

Hoffman, P.J., concurs separately.

*Hoffman, P.J., concurring*

{¶34} I concur in the majority's analysis and disposition of Appellant's assignment of error, but do so solely upon his failure to present sufficient evidence to demonstrate Appellee's actions caused him severe emotional distress.

{¶35} However, unlike the majority, I find when construing the evidence in a light most favorable to Appellant, reasonable minds could differ as to whether Appellee's conduct was extreme and outrageous.