NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0123n.06

Case No. 20-3473

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

LAURA HOFFMAN; LINDA HERMAN, )

  Plaintiffs-Appellants, )

  )

v. )

  )

MICHAEL C. O'MALLEY, in his official and )
personal capacities; JENNIFER DRISCOLL, )
in her official and personal capacities; )
GREGORY MUSSMAN, in his official and )
personal capacities; JOANNA WHINERY, in )
her official and personal capacities; LISA R. )
WILLIAMSON, in her official and personal )
capacities; CUYAHOGA COUNTY, OHIO, )

  Defendants-Appellees. )

  **FILED**
  Mar 09, 2021
  DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: COOK, GRIFFIN, and LARSEN, Circuit Judges.

COOK, Circuit Judge. Former Cuyahoga County assistant prosecutors Laura Hoffman and Linda Herman appeal the district court's grant of summary judgment in favor of Cuyahoga County Prosecutor Michael O'Malley, certain employees of his office, and the county itself. They claim that these defendants defamed them and singled them out for termination based on Hoffman's disability and Herman's age. We AFFIRM.

**I.**

Upon taking office as the new Cuyahoga County Prosecutor in January 2017, O'Malley learned of uncharged juvenile sexual assault cases that had fallen through the cracks. The Prosecutor then initiated an investigation of the Juvenile Justice Unit for such uncharged cases.

To that end, the juvenile unit's new intake supervisor emailed the assistant prosecutors, including Hoffman and Herman, asking for a list of all current juvenile sexual assault cases assigned to them. Within four days, Hoffman responded that she had two; Herman failed to respond.

Later, the juvenile unit's chief held an all-staff meeting where he directed all attorneys to immediately look for any more of these uncharged cases. With this second look, Hoffman found two additional uncharged cases. And Herman unearthed four—each of these, it turned out, sat unattended for more than a year. It came to light that Herman tried to cover her lapse by preparing unsanctioned "no prosecution" letters for the two oldest cases.

The following month, supervisory attorneys, including First Assistant Lisa Williamson, met with several assistant prosecutors, including Hoffman and Herman, to review just what went on with their assigned cases that had languished.

After the meetings, Williamson and the team scheduled pre-disciplinary conferences for Hoffman, Herman, their former supervisor Robin Belcher, and others. Here again, each had an opportunity to further explain their work on the neglected cases.

As regards Belcher, the interviewers focused on her laxity in ensuring diligent performance by those attorneys she supervised.

Hoffman defended herself by claiming to be proud of the job she did on her sexual assault cases. She explained that she marked two of her delayed cases inactive within one month of

receiving them. And marking cases inactive, she maintained, was at the direction of Belcher, her superior.

Herman, on the other hand, admitted that for over a year she just forgot about the four overlooked cases. She went on to offer the view that these are not real cases, but instead "cold cases" that did not require her to work them. She considered reviewing these cases to be an "academic exercise." Her supervisor Belcher, however, testified that Herman's four cases deserved prosecutorial attention.

Other assistant prosecutors showed that for a majority of their cases their performance was not negligent. Williamson initially identified Lakesha Johnson as responsible for eighteen delayed cases. Yet at the conference to go over the problem files, Johnson showed that she could be faulted for delay in only a third of the eighteen.

Evaluating the results of the investigation, Williamson testified about the contrasting attitudes among the neglectful assistants. Some, like Johnson, were upset, remorseful and wanted to make it right. Hoffman and Herman, on the other hand, were "indignant."

Williamson's investigation report prompted O'Malley to follow Williamson's recommendation to severely sanction Belcher, Hoffman, and Herman. O'Malley offered them the option to either resign or be terminated. They resigned. He disciplined Johnson and other prosecutors without seeking their resignation.

When the media got wind of this disciplinary situation in the Prosecutor's Office, O'Malley invited a reporter to discuss it. As a result of that meeting, the reporter published this:

> O'Malley last week asked three assistant prosecutors who handled the bulk of the delayed cases to resign. Laura Hoffman, Linda Herman and Robin Belcher resigned Wednesday, Thursday and Friday, respectively, after each had a disciplinary hearing in O'Malley's office.

Later, the reporter emailed the Prosecutor's Office for more details on the story, asking for clarification on the number of delayed cases Hoffman and Herman handled. O'Malley declined to provide specific numbers.

Hoffman and Herman eventually filed suit, alleging defamation and employment discrimination. After defendants moved for summary judgment, Hoffman and Herman requested more time to file expert reports. The court denied the request and granted summary judgment in defendants' favor on all claims. Hoffman and Herman appeal.

## II.

We review a district court's grant of summary judgment de novo. *Cass v. City of Dayton*, 770 F.3d 368, 373 (6th Cir. 2014). A court appropriately grants summary judgment if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Cass*, 770 F.3d at 373.

## III.

Hoffman and Herman challenge the district court's entry of summary judgment on their defamation claims, Hoffman's ADA claim, and Herman's ADEA claim. We find that each lacks merit.

## A.

As for Hoffman and Herman's first challenge to the dismissal of their defamation claims, they say they presented sufficient evidence to show that the County acted with actual malice. To succeed, they need to show that the County's press statements were knowingly false or recklessly unconcerned with their falsity. *McKimm v. Ohio Elections Comm'n*, 729 N.E.2d 364, 372 (Ohio 2000). Actual malice "requires a clear and convincing showing . . . of the defendant's actual state

of mind—either subjective awareness of probable falsity or actual intent to publish falsely." *Id.* at 373 (citation omitted). Courts "may not infer the existence of actual malice from evidence of personal spite or ill will alone; rather, [the] focus is on the publisher's attitude toward the truth or falsity of the publication." *Id.*

Hoffman and Herman argue that the district court "erroneous[ly] disregard[ed] . . . substantial evidence" of the County's malicious conduct toward them, including evidence showing it: (1) knew its classification of neglected cases "was based entirely on misrepresentations of reasonable differences between administrations regarding how to classify cases and allocate limited prosecutorial resources"; (2) knew they "were not responsible for setting the office-wide policies they reasonably followed in marking certain cases 'inactive'"; (3) knew it did not have any evidence showing that they "did anything but reasonably follow the orders of their supervisors regarding the seven 'mishandled' cases they worked on"; (4) did not ask Belcher about their performance on any of the seven cases before firing them; and (5) failed to "correct the record" after the reporter asked for clarification on the number of cases they handled.

These arguments lack record support. Hoffman and Herman cite primarily argument, not record evidence. *See Duha v. Agrium, Inc.,* 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). And the remaining points fail to target just what the County knew about how Hoffman and Herman handled their cases.

What is more, they fail to support their position with legal argument. After listing their "evidence," Hoffman and Herman simply assert "[i]n light of this evidence . . . the district court's holding . . . should be reversed." But "[a] party may not raise an issue on appeal by mentioning it in the most skeletal way, leaving the court to put flesh on its bones." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *United States v. Hendrickson*, 822 F.3d 812, 829 (6th Cir.

2016)). They cite only two cases parenthetically that do not support their argument. Neither record in those cases supported a finding of actual malice. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1293 (Ohio 1995). And Hoffman and Herman never alert the court as to how these cases support their position. *See Nat'l Credit Union Admin. Bd. v. Zovko*, 728 F. App'x 567, 569 (6th Cir. 2018) ("[T]he court is not obligated to search the record to make [the parties'] argument for them.").

Instead, as the County notes, the record contradicts the claim that it acted with actual malice; it shows that the County sought to learn how each attorney handled their cases by meeting with them twice to provide them an opportunity to explain what happened. Hoffman and Herman offer no evidence to the contrary.

This failure to offer evidence of actual malice also dooms their false light claims; those too require evidence of actual malice in the County's statement to the press. *See Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007). We find no error in the court's dismissal of these claims.

**B.**

Hoffman next contends that the court improperly dismissed her ADA discrimination claim. Under the familiar *McDonnell Douglas* burden-shifting framework, Hoffman needs first to establish her prima facie case of discrimination by "showing that similarly situated non-protected employees were treated more favorably." *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999) (citation omitted). The district court held that she failed to present evidence that any of the employees she alleged the County treated more favorably than her were non-disabled.

Hoffman contends, however, that she "was not required to present evidence that similarly situated employees were not disabled" given that the County "never presented any evidence . . .

that any of the similarly situated non-terminated prosecutors were actually disabled." The County responds, noting that Hoffman attempts to defend her lapse by improperly shifting *her* burden to it. The plaintiff, of course, retains the initial burden to establish the essential elements of a prima facie case. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

We agree with the district court and the County; Hoffman failed to present to the district court evidence on the disability status of any of the employees she alleged were treated more favorably than her. The County challenged Hoffman's prima facie case in its summary judgment brief, and it never conceded that her comparators were non-disabled. Hoffman needed to present evidence that other employees (comparators) were: (1) outside her protected class; (2) similarly situated to her; and (3) treated more favorably than her. *See Hopkins*, 196 F.3d at 660. She failed to do so, declining to support in the district court her assertion that the comparators were non-disabled. The court is not obliged to accept unsupported assertions as to other employees' disability status. *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 943 (6th Cir. 2011); *see also* Fed. R. Civ. P. 56(e). And her effort to support those assertions for the first time on appeal comes too late. This shortcoming in her presentation of a prima facie case supports the entry of summary judgment for the County on her disability cause of action.

### C.

Herman challenges the court's dismissal of her ADEA discrimination claim. But unlike its treatment of Hoffman's claim, the court went further along the *McDonnell Douglas* framework. In her case, the failure came in showing pretext. As the court recognized, Herman could establish pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the] discipline, or (3) that they were insufficient to motivate

discharge." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (emphasis omitted) (citation omitted). The court determined that she could not succeed under any theory.

Herman sees three errors in the district court's pretext analysis: (1) it applied a "pretext plus" standard; (2) it "disregarded substantial evidence" from which a jury could find pretext; and (3) it applied the "honest belief" rule. None warrants reversal.

First, Herman argues that the district court required her to prove that "discriminatory animus toward her because of her age" provided the "real reason" for her resignation. Yet, the district court properly analyzed pretext on the grounds she put forward, concluding that "Herman's evidence constitutes personal belief and conjecture, which are insufficient to establish pretext." In the context of the court's opinion, Herman's stance on the court applying "pretext plus" finds no support.

Second, she maintains that she presented ample evidence of pretext and that the district court "improperly restricted" her pretext evidence to the "single method" of showing the County's reasons for her discharge "simply did not happen." We instead read the opinion as showing that the court analyzed and rejected her theory that the County's proffered reasons were insufficient to motivate her termination. It found those reasons—her poor job performance—adequately motivating.

Herman would have the court assess particularly the County's treatment of Johnson as compared to her. To succeed on this theory of pretext, Herman needed to present "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Id.* This standard excludes "differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of them for it." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (citation omitted).

Here, as the County highlights, the "differentiating or mitigating circumstances" for Herman and Johnson include: the length of time each neglected her cases, who possessed the cases for that time, how each conducted herself at the pre-disciplinary conferences, Herman's violation of office policy by attempting to issue "no prosecution" letters for her cases, and Herman's reference to her cases as "cold cases" and an "academic exercise." Herman fails to address these differences, presenting only her subjective belief that she and Johnson engaged in identical misconduct. But "personal beliefs, conjecture and speculation" do not "constitute evidence of pretext." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (citation omitted).

Third, Herman suggests error in the court's use of the "honest belief" rule. She misreads the court's opinion. It correctly applied the rule only to her allegation that she did not mishandle any cases at all—the "no basis in fact" pretext theory.

To the extent she challenges the court's proper application of the honest belief rule, that argument fails too. Herman contends that she presented evidence that the County's investigation was "unworthy of credence" because (1) it could not provide a "rational explanation" for "how Johnson's 'work' on these files distinguished her from Herman"; (2) it "failed to determine" whether any of these files were "'worked up' or entered in the office's electronic-tracking system"; and (3) O'Malley "ignored an express recommendation that he not fire her." But an investigation is not "unworthy of credence" simply because it was not "optimal" or failed to "le[ave] no stone unturned." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285–86 (6th Cir. 2012) (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 807–08 (6th Cir. 1998)). "Rather, the key inquiry is

whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* at 285 (quoting *Smith*, 155 F.3d at 807).

The record confirms that the County did that with its multi-step investigation, pre-disciplinary hearing, and consideration before imposing discipline. It first asked everyone to turn in uncharged files. Then it reviewed them and identified the neglected ones. It twice brought in everyone who handled those files and gave them an opportunity to explain their conduct. O'Malley used the findings from these meetings to decide on the appropriate discipline for everyone. This record reflects that the County made a reasonably informed and considered decision before asking Herman to resign. Herman identifies no errors "too obvious to be unintentional." *Id.* at 286 (quoting *Smith*, 155 F.3d at 807). Without evidence to support her claims of pretext, her case ends at summary judgment.

## D.

Hoffman and Herman last contend that the court abused its discretion when it denied their motion for extension of time to file expert reports. The grant of summary judgment moots this claim. *See Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009).

## IV.

We AFFIRM.